### BALTIMORE & O. R. CO. v. HOOVEN.

(Circuit Court of Appeals, Sixth Circuit. April 17, 1924.)

No. 3962.

**1. Master and servant ⬅111(1)—Duty under Safety-Appliance Act absolute.**

The duty imposed on interstate railroads by the Safety Appliance Act April 14, 1910, § 2 (Comp. St. § 8618), is an absolute and unqualified one, both to install the safety appliances and to maintain them in a secure condition.

**2. Commerce ⬅27(3)—Vehicles within Safety Appliance Act.**

The test of liability under Safety Appliance Act April 14, 1910, § 2 (Comp. St. § 8618), is not the engagement of the vehicle in interstate commerce, and the right of a private individual to recover is not dependent on whether he was engaged in interstate commerce, but the act is applicable to all vehicles used on any railroad which is a highway of interstate commerce, whether the vehicles themselves are engaged in interstate commerce or not; it being necessary merely that the car is "in use on its line."

**3. Commerce ⬅27(8)—Safety Appliance Act held inapplicable to locomotive temporarily withdrawn from service and undergoing minor repairs in roundhouse; "haul or permit to be hauled or used on its line."**

Safety Appliance Act April 14, 1910, § 2 (Comp. St. § 8618), making it unlawful for a common carrier to "haul or permit to be hauled, or used on its line," any car not equipped with required appliances, *held* inapplicable to a locomotive temporarily withdrawn from service and undergoing minor repairs in a roundhouse preparatory to early return to service, in view of section 4 (Comp St. § 8621).

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Action by H. C. Hooven against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

W. T. Kinder, of Cleveland, Ohio (Tolles, Hogsett, Gin & Morley, and King Tolles, all of Cleveland, Ohio, on the brief), for plaintiff in error.

R. B. Newcomb, of Cleveland, Ohio (Skiles & Skiles, of Shelby, Ohio, and Newcomb & Nord, of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON and DONAHUE, Circuit Judges, and SIMONS, District Judge.

SIMONS, District Judge. There is presented the question whether the Safety Appliance Act covers the locomotive of an interstate railroad temporarily withdrawn from service and undergoing minor repairs in roundhouse in preparation for early return to service. The record shows that the locomotive came into the roundhouse the day before the accident for the purpose of undergoing its regular monthly inspection and for the making of certain running repairs. It is customary for engines brought into the roundhouse to be sprayed with oil for the purpose of conditioning them and protecting them from rust, the oil being washed off after the spraying process with warm water. The engine in this case was so treated, but the oil had not all been removed. Hooven, a machinist employed in the roundhouse, descending, after making minor adjustments on top of the boiler, slipped in stepping from the end of the steel running board, whereon oil had been left, and, being unable to save himself by clutching the hand rails, because they also were covered with oil and slippery, fell from the engine and was injured. At the time of the accident the engine was about ready for service, and was called to go out on the road shortly thereafter. From a judgment for Hooven, hereinafter called the plaintiff, the railroad, hereinafter called defendant, brings error.[1]

[1] By section 2 of the statute, as amended in 1910 (Comp. St. § 8618), it was made unlawful for a common carrier "to *haul,* or *permit to be hauled* or *used on its line* any car subject to the provisions of this act not equipped with appliances" provided for therein. Among the safety appliances provided for by the statute are "secure running boards * * * and * * * secure handholds or grabirons." The duty imposed upon interstate railroads by the act is an absolute and unqualified duty, both to install the safety appliances and to maintain them in a secure condition. Philadelphia & R. Ry.

[1] There was no claim that the running board inherently was not a "secure running board," except as it was said that there was a "depression" in it where the oil was retained. The evidence shows no depression substantial enough to be considered a defect. So far as the petition claims damages for negligence not dependent on the Safety Appliance Act, the case was not submitted to the jury.

Co. v. Eisenhart (C. C. A.) 280 Fed. 271; St. Louis, I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Chicago, B. & Q. Ry. v. U. S., 220 U. S. 559, 575, 31 Sup. Ct. 612, 55 L. Ed. 582; Delk v. St. Louis & San Francisco R. Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590; Texas & Pacific Ry. v. Rigsby, 241 U. S. 33, 41, 36 Sup. Ct. 482, 60 L. Ed. 874; Minneapolis & St. Louis R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995.

Not stopping to consider the argument of defendant below that a locomotive is not a *car* within the meaning of section 2 of the act, we come at once to the principal question presented by the record: Does the absolute liability of the railroad for the appliances and their security as fixed by the statute follow its instrumentalities of transportation beyond their actual present use or hauling, or, more specifically, is it the intent of the act to have the absolute liability imposed by it attach to the vehicle during such time as it is withdrawn temporarily from actual service and after it has reached the place of repair and is undergoing conditioning and repair for the purpose for which it is intended and for the use to which it is assigned?

[2] It must be borne in mind that the test of liability for injuries proximately resulting from a violation of the Safety Appliance Act is not the engagement of the vehicle in interstate commerce, and the right of a private individual to recover for an injury resulting from a violation of this act is also not determined by the fact that at the time of injury such person was or was not engaged in interstate commerce. Southern Railway Company v. U. S., 222 U. S. 20, 25, 26, 32 Sup. Ct. 2, 56 L. Ed. 72; Texas & Pacific Ry. Co. v. Rigsby, supra.

The applicability of the act in specific instances and its constitutionality have been placed on broader ground than this, and the act is applicable to all vehicles used on any railroad which is a highway of interstate commerce, whether the vehicles themselves are engaged in interstate commerce or not. The safety to be secured by the act is the safety of the persons transported in interstate commerce and of those who are employed in such transportation, no matter what may be the source of the dangers which threaten it. Southern Ry. Co. v. U. S., supra. The test of liability under the Safety Appliance Act must not be confused with the test of liability under the federal Employers' Liability Act (Comp. St. §§ 8657–8665). It is essential to a right of recovery under the latter act, not only that the carrier be engaged in interstate commerce at the time of the injury, but also that the person suffering the injury is then employed by the carrier in such commerce. Industrial Accident Commission of California v. Davis, 259 U. S. 182, 42 Sup. Ct. 489, 66 L. Ed. 888; Shanks v. Delaware, Lackawanna & Western R. Co., 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797. The cases just cited were relied on by the court below in holding the Safety Appliance Act applicable to the instant case. Both cases considered the test of liability under the federal Employers' Liability Act.

In actions under the Employers' Liability Act the statutory test is whether the employee of the interstate carrier is himself at the time engaged in interstate commerce; he is deemed to be so employed if he is working upon an "instrumentality of interstate commerce"; and a car or engine is sometimes deemed to continue to be such instrumentality, even though it is not at the precise time active therein. In actions under the Safety Appliance Act the statutory criterion is whether the car is "in use" "on its line," within the true purpose and scope of the act. The two tests are not synonymous, though it does not, of course, follow that, because the act has been held to extend to vehicles not themselves engaged in interstate commerce (Southern Ry. Co. v. U. S., supra), and its protection to cover employees themselves unconnected with interstate commerce (Texas & Pacific Ry. Co. v. Rigsby, supra), it may not be applicable to all vehicles and employees engaged in interstate commerce. Yet, when we regard the reasons upon which the broad extent of the act has been upheld and its constitutionality sustained, it is difficult to see wherein the safety of a highway of interstate commerce may be endangered by a locomotive withdrawn from service and at rest in a stall of the railroad's roundhouse undergoing repairs, even though such withdrawal be but temporary.

[3] The act forbids the "use" or "hauling on its line" of prescribed cars. Whatever ambiguity lies in the statute results from the susceptibility of the term "use" to an interpretation equivalent in meaning to the terms "employ" or "engage," or the phrase "habitually use," as distinguished from the term "use" as implying actual present use. Having in mind the broad aims and purpose of the statute and its specific provisions, we think there can be no doubt as to the meaning of its prohibitory clause. The statute imposes an absolute liability on the carrier to equip its vehicles with safety appliances and to keep such appliances secure. The act of equipping the vehicle originally with the safety appliances and the act of repairing an appliance which becomes defective in use are acts in compliance with and not in violation of law, and are not in our judgment acts which the law intends to penalize. The process of conditioning an engine and preserving it from deterioration through rust by spraying it with oil appears to be, so far as this record is concerned, the usual and necessary treatment of the engine during monthly inspection, contributing to the safety of the apparatus while in actual use. If during such treatment the safety appliances are rendered temporarily insecure by the presence of oil upon them, it does not seem to us to present a condition that comes within the purview of the act, when as in this case the engine is completely withdrawn from all relationship to the highways of interstate commerce, and from all connection with the movement of trains thereon.

Another consideration also contributes to this conclusion. Assuming it to be the wise and humane purpose of the act to secure the utmost of safety to travelers and employees upon the highways of interstate commerce, whatever may be the source of the dangers which threaten it, it becomes the clear duty of the carrier in conformity with

such purpose, as was suggested by this court (opinion of Judge Knappen, Southern Ry. Co. v. Snyder, 187 Fed. 492, at page 497, 109 C. C. A. 344), to exercise a high degree of diligence in discovering and repairing defects in its safety appliances and in withdrawing the car from commercial use while they exist. Such diligence seems also to be imposed on the carrier by the Boiler Inspection Act (Comp. St. § 8630 et seq.) and related statutes. Can it be said that it is the intention of the Safety Appliance Act to penalize such diligence by extending the absolute liability of the carrier through the period of replacement and repair, and reaching even a case where the insecure condition of the appliance which failed was the natural and temporary result of the reconditioning process? We think such contention untenable, unless supported by specific direction of the statute.

In determining the applicability of the Safety Appliance Act to the instant case, we are not confined alone to a consideration of the intent and general purpose of the statute. The specific provisions of the act itself, as well as the language of its prohibitory clause, furnishes some guide to the limits within which it is to be applied. Section 4 of the amendment of 1910 (Comp. St. § 8621) prescribes a penalty for using or hauling, or permitting to be used or hauled, a car subject to the provisions of the act and not equipped as provided therein. The penalty, however, is subject to the following proviso:

"Provided that where any car shall have been properly equipped as provided in this act and the other acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed * * * if such movement is necessary to make such repairs and such repairs cannot be made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability * * * caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure."

It will be observed that it is within the contemplation of the statute that safety appliances will become defective, and that such defects will necessitate withdrawal from service of the defective car while repairs are being made, and for that purpose the penalty of the statute is for the time being lifted. It is equally within the contemplation of this section, however, that the necessity of hauling the defective car to the place of repair is attended with danger, so, while lifting the penal provisions of the act from the car, the Congress was careful to keep the defective car within the liability provisions of the act in case of injury by reason of or in connection with the movement or hauling of such car. It will be noted that in restating the civil liability of the carrier during the hauling of the car or in connection with its movement, as a limitation on or exception to the proviso which removed the penalty, the civil liability was not extended to such time as followed the cessation of hauling or movement and while the car was stationary and being repaired at the repair point. It would seem from this that the civil liability of the statute was thought to

cover the vehicles of the carrier only when in actual use, unless after withdrawal from service it was necessary to move such vehicles or haul them to a repair point. So in a number of cases, where the carrier has been held liable for injuries caused proximately by the defective appliances of a car withdrawn from service, the liability has been sustained on the theory that the injury occurred during the time when the defective car was being hauled to the nearest available point for repairs, or in connection with such moving or hauling. Great Northern Railway v. Otos, 239 U. S. 349, 351, 36 Sup. Ct. 124, 60 L. Ed. 322; Texas & Pacific Ry. v. Rigsby, supra.

In the case of Southern Railway Co. v. Snyder, supra, it was thought by this court (opinion of Judge Knappen) that the act did not apply to vehicles withdrawn from commercial use and from interstate commerce and withdrawn from connection with vehicles in commercial use in interstate commerce. We have seen from authorities previously cited that a car with defective appliances may come within the scope of the act, even though withdrawn from commercial use, and from interstate commerce while it is being hauled on a highway of interstate commerce for purpose of repair. It would seem, however, that the distinction made in the Snyder Case between cars in commercial use and those withdrawn from commercial use, where the matter of hauling or of movement or any connection with hauling or movement is not involved, is still a pertinent distinction as determining the limitation of the applicability of the Safety Appliance Act to vehicles in actual use. This was apparently still Judge Knappen's opinion when the Snyder Case was again considered by this court after retrial (Southern Railway Co. v. Snyder, 205 Fed. 868, 124 C. C. A. 60), and after the decision in Southern Railway Co. v. U. S., supra, rendered the distinction between use in interstate and use in intrastate commerce immaterial.

Another feature of the prohibitory clause of the statute must not be overlooked. The statute forbids the carrier to haul or permit to be hauled or used *on its line* any car, etc. It was indicated by this court in McCalmont v. Pennsylvania Railroad Co., 283 Fed. 736, though not as a basis for decision, that it might well be thought that the prohibition did not apply at all to merely yard movements, citing Louisville & Jeffersonville Bridge Company v. United States, 249 U. S. 534, 39 Sup. Ct. 355, 63 L. Ed. 757. While there may be some indication (Texas Railway v. Rigsby, supra) that intermediate shiftings at the repair point yard are part of the unitary journey of the car from the point where the defect is discovered to the place of actual repair, there are no cases from which any holding may be inferred to the effect that a car at rest at the repair point and not in relation to movement of other cars, is a part of such unitary movement as is covered by the exception to the proviso in section 4 of the 1910 amendment.

We conclude from the foregoing that the Safety Appliance Act is not applicable to the instant case. The plaintiff based his right to recover for his injury solely upon the absolute liability claimed to be imposed upon the defendant by the Safety Appliance Act, and it was

on this theory that it was submitted to the jury by the trial court. There was no evidence offered of the negligence of the defendant, nor is it now claimed that the record discloses any such evidence. This being so, the District Judge erred in denying the defendant's motion for a directed verdict, and it becomes unimportant to consider the remaining questions in the case.

The judgment of the District Court is reversed.