**NEW YORK, C. & ST. L. R. CO. v. KELLY.**
**No. 5043.**

Circuit Court of Appeals, Seventh Circuit.
April 21, 1934.

Rehearing Denied May 26, 1934.

Russell P. Harker, of Frankfort, Ind. (Graham, Crane & Elliott, of South Bend, Ind., and W. J. Stevenson, of Cleveland, Ohio, of counsel), for appellant.

Lenn J. Oare, of South Bend, Ind., and Fae W. Patrick and Thomas L. Webber, both of Indianapolis, Ind. (Seebirt, Oare, Deahl & Omacht, of South Bend, Ind., of counsel), for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellant (defendant below) seeks to reverse a judgment for damages for personal injury. At the conclusion of appellee's (plaintiff below) evidence, appellant moved for a peremptory instruction to the jury to return a verdict in favor of appellant, which was overruled. At the conclusion of all the evidence, the motion was renewed and overruled, and the jury returned a verdict in a substantial sum. A motion for a new trial was denied, and judgment entered on the verdict.

The complaint contains two paragraphs, both brought under the Federal Employers' Liability Act (45 USCA §§ 51–59). The first relies upon the common-law negligence by reason of the defective condition of the freight car in question; the second, upon the absence of a grabiron at the top of the side ladder, on the roof of the car, and invokes the Federal Safety Appliance Act (45 USCA § 1 et seq.). Appellant answered in general denial and filed an affirmative answer, alleg-

ing that the freight car in question had been withdrawn from use and appellee had assumed the risk. It was conceded by both sides that the employment of appellee was in interstate commerce and that the Employers' Liability Act controls.

The court withdrew from the jury the question tendered by the first paragraph, that is, the charge of common-law negligence, but sent to the jury the issue tendered under the Safety Appliance Act, by the second paragraph. Appellant conceded that the grabiron was missing, but contended the car was undergoing repairs and had been withdrawn from use.

Two errors were assigned, the refusal of the court to direct a verdict for appellant, and erroneous instructions of the court with regard to withdrawal of the car from use so as to make inapplicable the Safety Appliance Act.

Appellee, Kelly, was employed as a field brakeman in a yard crew at the Twenty-Second street yards at Indianapolis. He had been employed by appellant for twenty-four years prior to the accident, seventeen years as a brakeman and switchman and seven years as a conductor, working regularly twenty-six days a month. He stated he knew the car from which he fell was on the repair track for repairs.

In order to indicate cars which were undergoing repairs, a bad order card was placed on the sides of each end of every defective car when it reached the repair track and was not removed until the repairs were completed. Prior to and at the time appellee received his injuries, such a card, showing the nature of the defects, was on each end of the car from which he fell. The cards on the car in question, at the time, stated that the latitudinal running board was missing, and the stile was split on the brake end of the car, right side. Appellee had handled cars on the repair tracks during his experience as a switchman. He knew the purpose and meaning of bad order cards and the rules of the company requiring him to familiarize himself with the conditions of the cars. Appellee claimed to have had difficulty in reading the cards in question, but did not claim to have read the cards prior to the accident. It is admitted that the car was undergoing repairs, on a repair track which was not used for general switching and which was locked so as to preclude the entry of cars while repairs were being made until 4 o'clock p. m., when the track was unlocked to permit the repaired cars to be withdrawn.

According to appellee's testimony, his yard crew, generally engaged in making up an interstate train, on June 27, 1932, entered the repair track with interstate cars attached to the engine, after the repair work had been completed for the day, and in so doing, unintentionally moved the car in question a few feet. Thereafter appellee attempted to set the brake on it, fell and was injured, because of the absence of a grabiron. This story was sharply contradicted by practically all of the other witnesses on every material point.

Appellee testified that the brake on the car from which he later fell had not been set; that it was the custom and his duty to see that the brake was set, to prevent the car running off the repair track, which sloped to the south; that he left the main track and went over to the freight car for the purpose of setting the brake. In this he was squarely contradicted by all the witnesses. They stated the repair track is level and there is no custom or duty to set the brakes on a car on this track. Appellee further testified that he went to the brake end of the car, climbed up the ladder, and, upon reaching the top, without looking, he reached for the grabiron, but it had been removed in the course of repairs; he grabbed a stile, which was unattached, and fell back to the ground.

Twenty-Second street, in Indianapolis, runs east and west. Appellant's tracks run north and south. On Twenty-Second street the Belt tracks lead from appellant's tracks to the southeast. A few feet south of the clearance of the Belt tracks another lead began, running off appellant's old main track; after that lead clears the easterly main track another set of leads connects with a side track; just beyond the clearance of the side track is another track which leads to repair tracks Nos. 1 and 2. At the point where appellee fell, all of the main tracks and the repair tracks run due north and south; the repair tracks being separated a considerable distance from all the main tracks and the side track. The repair tracks run to stub ends, and at the end of each is an earth bumper. No. 1 repair track is called the west track and No. 2 the east track.

Appellee, in explaining what the yard movement was just prior to the accident, stated that the yard crew had taken cars from the Twenty-Second street yards, where he was injured, to the Thirty-Eighth street yards; there the crew picked up some loaded grain cars, some of which were interstate; that a portion of the cars picked up were to be de-

livered to the Belt Railroad and some to be returned to the Twenty-Second street yards, where they were to be placed in interstate freight train No. 82 which was then being made up in the Twenty-Second street yards. All of the other witnesses contradicted appellee. They said all of the cars from the Thirty-Eighth street yards were for delivery to the Belt Railroad and train No. 82 was not then being made up. After the engine returned to the Twenty-Second street yards, it went on the east repair track, removed all of the cars on that track, then backed into the west repair track, removing all of the cars except the car from which appellee fell; the cars removed having been repaired, and the car from which appellee fell being unfinished.

Appellee testified that, when the engine backed into the west track, the cars' on the track being spaced some distance apart were all shoved together, including the last car, the one from which he fell; that the slack then ran out between the cars, pushing the last car several feet. towards the end of the repair track and necessitating its being pulled back a few feet towards the north. The other witnesses denied this.

A vital question in this case is whether or not a freight car removed from the service to the extent it is taken out of actual service and put on the repair tracks for specified repairs is still "in use" within the meaning of the Safety Appliance Act.

There is no conflict in the evidence upon the following facts: (1) The car from which appellee fell was defective, had been removed from the service and placed upon the established and segregated side track known as the repair track, for repair; (2) appellee had been in the service twenty-four years and must have known the nature and purpose of repair tracks; that an attempt to handle any of the cars on the repair tracks from which the "bad order" cards had not been removed was inherently dangerous; that cars were to be found in various states of repair while standing upon such track; and (3) that work on the car in question was unfinished, and its "bad order" notices were still posted on it.

The only explanation given by appellee for climbing up the side ladder of the car to set the brake was that there was a slight incline in the grade of the track to the south, which was contradicted by all the other witnesses in the case. Be that true or untrue, the car could have run but a short distance until it would have been stopped by the earth bumper; furthermore, the car had been there three days, according to the date of the "bad order" cards.

After a defective car reaches the place of repair, the Safety Appliance Act is inapplicable because such car has been withdrawn from service and is not "in use" under the provisions of the act, nor does mere shifting of cars within the place of repair put the car "in use" within the meaning of the statute. Kaminski v. Chicago, etc., R. R. Co., 180 Minn. 519, 231 N. W. 189, certiorari denied 282 U. S. 872, 51 S. Ct. 78, 75 L. Ed. 770; Baltimore R. Co. v. Hooven (C. C. A.) 297 F. 919; McCalmont v. Pa. R. R. Co. (C. C. A.) 283 F. 736, certiorari denied 260 U. S. 751, 43 S. Ct. 250, 67 L. Ed. 495.

The Safety Appliance Act (title 45, § 11 USCA) was enacted by Congress to promote the safety of certain employees, and provides:

"It shall be unlawful for any common carrier subject to the provisions of this chapter to haul, or permit to be hauled or used on its line any car subject to the provisions of this chapter not equipped with appliances herein provided for, to wit: All cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure handholds or grab irons on their roofs at the tops of such ladders. * * * "

Section 13 of the above title, which is the penalty clause, after providing for the penalty for the violation of section 11, contains an express provision:

"That where any car shall have been properly equipped, as provided in this chapter, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by this section or section 6 of this chapter, if such movement is necessary to make such repairs and such repairs can not be made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in

connection with the movement or hauling of such car with equipment which is defective or insecure or which is not maintained in accordance with the requirements of this chapter; and nothing in this proviso shall be construed to permit the hauling of defective cars by means of chains instead of drawbars, in revenue trains or in association with other cars that are commercially used, unless such defective cars contain livestock or 'perishable' freight."

So, it is clear that Congress in the enactment of the Safety Appliance Act was limiting its operation to cars hauled or permitted to be hauled or used on the line, recognizing that, while the car is in transit, it may become defective, and, notwithstanding that fact, it may be hauled on the line, if necessary, to reach the repair point, that the carrier shall not in such instance be subject to any statutory criminal penalties. At the same time, Congress appreciated the fact that it was hazardous to attempt to move such a car on the line of a railroad even to a repair point, and permitted the civil liabilities for injuries to employees to apply to such movement. It is not contended here that the car in question came within the provisions of this section.

■ Had the car in question been en route to the repair place, a different situation would have been presented, but after it reached the repair place, was out of service, the carrier was entirely within its rights in taking off the handhold or any other of the safety appliances necessary to effect the repairs, without violating the Safety Appliance Act.

■ Since it is so clear that the car was not in use, it was erroneous to submit the case to the jury; therefore it is unnecessary to consider the correctness of instructions under which it was sent to the jury.

■ In this case appellee was an experienced railroad man, in the service of appellant twenty-four years, had spent seventeen of those years as a brakeman and switchman. He knew the nature of repair tracks, why cars were put upon them, how they were marked with "bad order" cards, and must have known that it was dangerous to go upon them or to work with them when upon the repair tracks. At 4:45 p. m., on an afternoon in June, the absence of a handhold where there should have been one, had the car been in service, could easily have been seen. Having proceeded, it must be held that he assumed the risk of any injury he might sustain.

■ The defense of assumption of risk remains as at common law save in the cases mentioned in section 4 of the Act of April 22, 1908 (title 45, § 54, USCA); that is to say, " * * * any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." Jacobs v. Southern R. Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970; Atchison, etc., R. Co. v. Swearingen, 239 U. S. 339, 36 S. Ct. 121, 60 L. Ed. 317; Great Northern R. Co. v. Otos, 239 U. S. 349, 36 S. Ct. 124, 60 L. Ed. 322; Southern R. Co. v. Crockett, 234 U. S. 725, 34 S. Ct. 897, 58 L. Ed. 1564.

■ Assumption of risk is a defense to which a defendant sued under the Federal Employers' Liability Act (45 USCA §§ 51–59) is entitled where the injury was caused otherwise than by the violation of some statute enacted to promote the safety of employees. Chicago, etc., R. Co. v. Ward, 252 U. S. 18, 40 S. Ct. 275, 64 L. Ed. 430.

■ Where the evidence is undisputed or of such conclusive character that a contrary verdict would have to be set aside, in the exercise of sound judicial discretion, the refusal of the trial court to direct a verdict constitutes reversible error. Small & Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Barrett v. Virginian R. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092; Herron v. Southern Pac. Co., 283 U. S. 91, 51 S. Ct. 383, 75 L. Ed. 857; Atchison, etc., R. Co. v. Wyer (C. C. A.) 8 F.(2d) 30.

The judgment is reversed, and the cause remanded for further proceedings in harmony with the views herein expressed.