**WALLING, Wage and Hour Adm'r, v. PATTON–TULLEY TRANSP. CO.**

No. 9352.

Circuit Court of Appeals, Sixth Circuit.

April 8, 1943.

Morton Liftin, of Washington, D. C. (Irving J. Levy and Bessie Margolin, both of Washington, D. C., Jeter S. Ray, of Nashville, Tenn., and Morton H. Rowen and Charles R. Reynolds, Jr., both of Washington, D. C., on the brief), for appellant.

John Vorder Bruegge, of Memphis, Tenn. (H. D. Bird, of Memphis, Tenn., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

In a proceeding by the Administrator of the Wage and Hour Division of the United States Department of Labor, to subject the appellee to the provisions of § 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., two controversial issues appear, both decided adversely to the Administrator, (1) whether employees engaged on dike and revetment construction in the Missouri and Mississippi Rivers, under contracts of their employer with the United States, are engaged in commerce, and (2) whether the Act of September 9, 1940, 40 U.S.C.A. § 325a, amending the so-called "Eight-Hour Law" of June 19, 1912, 40 U.S.C.A. §§ 324, 325, repealed the Fair Labor Standards Act in respect to such employees.

The appellee is a Tennessee corporation engaged in loading and transporting logs on the Mississippi River, and in the construction of dikes and revetments in both the Mississippi and Missouri Rivers, and in connection with its loading and transporta-

tion business maintains a fleet of boats and barges towed by tugs in interstate commerce. It likewise, under contract with the United States, has been engaged in the construction and repair of dikes and revetments on the Mississippi in the performance of which large quantities of material are shipped from several states to the scenes of operation. Both the Missouri and Mississippi Rivers carry a substantial volume of interstate traffic, and the purpose of the dike and revetment work is to direct and channelize the current of the river in order to prevent erosion and to maintain the minimum depth required by commercial navigation.

The appellee stipulated, and the court found, that employees engaged in unloading out-state goods in Tennessee were subject to the provisions of the Fair Labor Standards Act; that in respect to them wages were paid at rates less than the minimum provided in the Act for the period involved; that the appellee had failed to make, keep and preserve records setting forth the information required to be recorded by regulations promulgated by the Administrator; and that the latter was entitled to the relief prayed. It entered a decree for injunction in this respect, but at the same time denied to the Administrator any relief in respect to wages and hours of work of employees engaged in constructing and repairing dikes and revetments, on the ground that unlike the others, they were not engaged in commerce.

The Fair Labor Standards Act, § 3(b), 29 U.S.C.A. § 203(b), defines "commerce" to mean "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof," and § 6(a) requires that every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce, wages during respective periods following the effective date of the Act at the hourly rates therein specified, and § 7(a), 29 U.S.C.A. § 207(a), establishes a weekly maximum of hours of work unless the employee receives compensation in excess of such hours at a rate not less than 1½ times the regular rate at which he is employed. It is conceded that we are not here concerned with the phrase, "in the production of goods for commerce" which is incorporated in the recited definition of commerce.

The District Court concluded that the dike and revetment employees of the appellee were not engaged in commerce within the coverage of the Fair Labor Standards Act, because unlike the National Labor Relations Act 29 U.S.C.A. § 151 et seq., and other statutes, it does not reach activities which merely affect commerce, but only those activities which are directly in commerce; that the dike and revetment work of the appellee was local in its nature and had no direct, but merely an indirect effect on river navigation, and that to bring employees in local construction within its coverage would require a strained construction of its plain wording.

Long before the expanded concept of interstate commerce, as we now understand it, began to develop, we pointed out in Baltimore & Ohio R. R. Co. v. Hooven, 6 Cir., 297 F. 919, 922, that in actions under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the statutory test was whether the employee of the interstate carrier is himself engaged in interstate commerce, and that he is deemed to be so employed if he is working upon an instrumentality of interstate commerce. This was in response to numerous decisions of the Supreme Court, including Industrial Accident Commission of California v. Davis, 259 U.S. 182, 42 S.Ct. 489, 66 L.Ed. 888; Shanks v. Delaware, Lackawanna & Western R. R. Co., 239 U.S. 556, 36 S.Ct. 188, 60 L.Ed. 436, L.R.A.1916C, 797; Philadelphia, B. & W. R. R. Co. v. Smith, 250 U.S. 101, 39 S.Ct. 396, 63 L.Ed. 869, all of them decisions prior to the specific amendment of the Federal Employers' Liability Act by the Act of August 11, 1939, 53 Stat. 1404, § 1, 45 U.S.C.A. § 51. This line of reasoning stems from Pedersen v. D., L. & W. R. R. Co., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas.1914C, 153, where it was held that independently of the statute the work of keeping tracks and bridges used by interstate commerce in a proper state of repair, is so closely related to such commerce as to be, in practice and in legal contemplation, a part of it.

Consistently have we held to this line of authority, including within the ambit of interstate commerce thus defined, not only employees working on tracks and roadways directly employed by interstate railroads, but likewise those employed by a construction company engaged in such activities, Erie R. R. Co. v. Margue, 6 Cir.,

23 F.2d 664; employees not directly engaged in train movements unless the instrumentalities had been withdrawn from service, Law v. Illinois Central R. R. Co., 6 Cir., 208 F. 869, and bridge carpenters, painting bridges over which interstate trains travel, Norfolk & Western R. R. v. Trautwein, 6 Cir., 111 F.2d 923, to mention but a few of the adjudications.

The District Court sensed a distinction between the present case and those applying the doctrine of the Pedersen case, based upon the rule of Raymond v. C., M., St. P. & P. R. R. Co., 243 U.S. 43, 37 S.Ct. 268, 61 L.Ed. 583, and cases therein cited, in the fact that the employees of the appellee were engaged in a construction operation rather than in one of maintenance or repair of an interstate facility, since it had been there held that construction of a facility not yet employed in interstate commerce was not engagement in such commerce. The short answer is that the Mississippi River has been a highway of interstate commerce since states were first carved out of its contributory territory, and so the reasoning that construction upon a highway not yet utilized for interstate commerce is not work in interstate commerce does not apply. Nor is there point to the distinction that the Pedersen case involved the employees of an interstate carrier, concededly engaged in interstate commerce, while the present case involves employees of a construction company, which is not, in the employment of the men here involved, an interstate carrier. The reasoning of Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, in respect to another phase of the statute, precludes such distinction, as does Erie R. R. Co. v. Margue, supra. Whatever doubt there may have been of the soundness of the doctrine of the Pedersen case, derives from the decision of the Supreme Court in Detroit International Bridge Co. v. Appeal Board of Michigan, 294 U.S. 83, 55 S.Ct. 332, 79 L.Ed. 777, and its earlier decision in the same case, 287 U.S. 295, 53 S.Ct. 137, 77 L.Ed. 314. These were tax cases involving the question whether, under state statutes, the taxing of an international bridge claimed to be a highway or facility for interstate or foreign commerce, impeded or burdened such commerce, and were decided largely in reliance upon Covington & Cincinnati Bridge Co. v. Kentucky, 154 U.S. 204, 14 S.Ct. 1087, 38 L.Ed. 962, and Henderson Bridge Co. v. Kentucky, 166 U.S. 150, 17 S.Ct. 532, 41 L.Ed. 953, in the former of which it was said that the state tax was not a tax upon interstate business because the Bridge Company did not transact such business,—that being carried on by the persons and corporations which paid the tolls for the privilege of using the bridge.

That the Detroit Bridge cases could have been similarly decided upon other grounds, perhaps is now clear, and we are relieved of the difficulty of trying to distinguish in respect to interstate commerce between the maintenance of the instrumentalities by which commerce is moved and the maintenance of the highway over which it moves, a difficulty enhanced by recent history of which we may take judicial notice, since the international bridge and the tunnel, likewise but a highway of foreign commerce, have now rendered obsolescent the facilities of the long existent ferry company which was the carrier of the same commerce, Detroit & Windsor Ferry Co. v. Woodworth, 6 Cir., 115 F.2d 795. Whatever doubt there may have been of the soundness of the Pedersen case doctrine, is now completely dispelled by the recent decision of the Supreme Court in Overstreet v. North Shore Corp., 63 S.Ct. 494, 87 L.Ed. ——, decided February 1, 1943, and its companion case Pedersen v. Fitzgerald Construction Co., 63 S.Ct. 558, 87 L.Ed. ——, decided February 8, 1943, reversing Overstreet v. North Shore Corp., 5 Cir., 128 F.2d 450, and 262 App.Div. 665, 30 N.Y.S.2d 989, and distinguishing the Detroit Bridge cases upon which the District Court so greatly relied. In the Overstreet case the court pointed to the similarity between the Federal Employers' Liability Act and the Fair Labor Standards Act, in that both aim at protecting commerce from injury through adjustment of the master-servant relationship, one by liberalizing common law rules pertaining to negligence, the other by eliminating sub-standard working conditions. It saw no reason why the scope of employment in commerce, laid down in the Pedersen case, should not be applied to the similar language of the Fair Labor Standards Act, and observed that the Henderson and Detroit Bridge cases do not affect this conclusion. In the light of this reasoning and authority we have no difficulty in concluding that the dike and revetment employees of the appellee were engaged in interstate commerce, and so came within the scope of the Fair Labor Standards Act.

The remaining issue in the case presents a comparatively simple problem which may quite simply be stated. The Fair Labor Standards Act prescribes a weekly maximum of hours of work which, in respect to the period here involved, is 40 hours, unless the employee receives compensation in excess of such hours at a rate not less than 1½ times the regular rate at which he is employed. It was enacted June 25, 1938. Subsequently, on September 9, 1940, by a rider to the Second Supplemental Defense Appropriation Act of 1941, the original Eight-Hour Law of June 19, 1912, as amended by the Act of March 3, 1913, was again amended by § 303, 40 U.S.C.A. § 325a which reads:

"Notwithstanding any other provision of law, the wages of every laborer and mechanic employed by any contractor or subcontractor engaged in the performance of any contract of the character specified in the Act of June 19, 1912 (37 Stat. 138; U.S.C., Title 40, secs. 324, 325), shall be computed on a basic day rate of eight hours per day and work in excess of eight hours per day shall be permitted upon compensation for all hours worked in excess of eight hours per day at not less than one and one-half times the basic rate of pay."

It will be observed that the Fair Labor Standards Act, insofar as it here applies, proscribes employment of any laborer or mechanic engaged in commerce for a longer period than 40 hours a week unless the employee receives compensation in excess of such hours at a rate not less than 1½ times the regular rate, but is silent as to the method of computing the regular rate or the base pay. The amendment to the Eight-Hour Law provides that the basic day is one of 8 hours, but that work in excess of 8 hours per day may be permitted, and if so wages shall be computed for all hours worked in excess of 8 hours per day, at not less than 1½ times the basic rate of pay. Still more simply stated, the Fair Labor Standards Act prohibits employment for more than 40 hours a week without overtime compensation to employees; the amendment to the Eight-Hour Law prohibits employment by contractors for the government in excess of 8 hours per day without overtime compensation. The District Court found the two provisions repugnant to each other and irreconcilable, especially in view of the clause beginning "notwithstanding any other provision of law." It therefore concluded that the Eight-Hour Law amendment superseded the Fair Labor Standards Act in respect to wages and maximum hours of employees of the class here involved. It held that the two statutes could not be considered in pari materia since they could not both be given effect.

■■ We are unable to agree with this conclusion. Repeals by implication are not favored and a later law will not be construed to repeal one enacted prior thereto unless the two acts are so clearly repugnant that they may not easily be reconciled. If both statutes can be made effective by reasonable construction, such construction will be adopted. Posadas v. Nat'l City Bank, 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351; United States v. Burroughs, 289 U. S. 159, 53 S.Ct. 574, 77 L.Ed. 1096; United States v. Jackson, 302 U.S. 628, 58 S. Ct. 390, 82 L.Ed. 488; General Motors Corp. v. United States, 286 U.S. 49, 52 S. Ct. 468, 76 L.Ed. 971, 82 A.L.R. 600; West India Oil Co. v. Domench, 311 U.S. 20, 61 S.Ct. 90, 85 L.Ed. 16.

■ We perceive no difficulty in the reconcilement of the Eight-Hour Law amendment with the Fair Labor Standards Act. The one limits employment at basic pay to 40 hours a week, the other deals solely with daily employment of men in certain classifications, and limits such employment at basic pay to 8 hours a day. No difficulty will be perceived in complying with both statutes,—giving overtime pay for work in excess of the weekly maximum, in the one case, and overtime pay for work in excess of the daily maximum, in the other. Nor is there any insuperable difficulty in determining the basic rate. A weekly wage may easily be computed in terms of days or hours, a daily wage in terms of hours, and an hourly wage requires no computation, in the determination of overtime pay. And reasonable reconcilement does not require cumulative liability on the employer, resulting in double overtime compensation for like overtime periods.

If it be held that the Eight-Hour Law alone applies to the employees of the appellee, it would be permissive, as pointed out by the Administrator, for the appellee to work its men 56 hours per week, and so long as they were not employed in excess of 8 hours on any one day, no overtime compensation would be required. Intention to bring about such result is not to

be ascribed to the Congress in the enactment of remedial legislation such as here involved. Moreover, if we look to the legislative history of the Eight-Hour Law it is perfectly clear that no such result was intended. It is true that the amendment was enacted later than the Fair Labor Standards Act, but the basic statute was first enacted in 1912, and it provided that every contract thereafter made, to which the United States is a party, and every contract made on behalf of the United States involving the employment of laborers and mechanics, shall contain a provision that none of them shall be required to work more than 8 hours in any one calendar day. By the Act of March 4, 1917, 40 U.S.C.A. § 326, the President was authorized, in the event of a national emergency, to suspend this limitation, provided that overtime compensation was paid for hours in excess of 8. Undoubtedly this authorized suspension was in view of the emergencies created by the first world war. The power was not, however, exercised. In June, 1940, the Congress, by Act No. 671, 54 Stat. 679, 41 U.S.C.A. preceding § 1 note, completely suspended the 1912 law with respect to persons engaged upon work covered by Army, Navy and Coast Guard contracts. This was undoubtedly in view of the clearly impending necessity of again preparing for war. But it created discrimination in that employees of contractors for the Army, Navy and Coast Guard were permitted to work in excess of 8 hours per day, while other employees of the same contractors, under contracts with other agencies, were not. The rider to the Second Supplemental Defense Appropriation Act of 1941 removed this inequality, and by it Congress made effective the discretion earlier vested in the President, but in all of these amendatory provisions it is perfectly clear that adherence was had to the principle of a normal 8-hour limitation.

Like the Fair Labor Standards Act, the Eight-Hour Law is one whose purpose it is to eliminate sub-standard working conditions. As such it should be given construction to effect such purpose. Overstreet v. North Shore Corp., supra. The argument that it was the Congressional intention to make the Fair Labor Standards Act inapplicable to work under government contract, must be rejected. No reason appears why contractors for the government are to be permitted to maintain sub-standard labor conditions while private contractors are prohibited from so doing, and such view would thwart the clearly defined purpose of the Congress, particularly if applied at a time when all, or nearly all, major industries are operating upon government contract.

Judgment reversed and the cause remanded for further proceedings consistent herewith.