**John BLAZIN, Plaintiff,**

v.

**SOUTHERN PACIFIC COMPANY, a corporation, Defendant.**
**No. 33178.**

United States District Court,
N. D. California, S. D.

Dec. 29, 1954.

Nichols, Richard, Allard & Williams, by Jesse Nichols, Oakland, Cal., for plaintiff.

Dunne, Dunne & Phelps, by Michael Messner, San Francisco, Cal., for defendant.

MURPHY, District Judge.

Defendant moves for a new trial on two grounds:

1. *Excessiveness of the Verdict*

I recognize that the trial judge is not a mere arbiter but the question of

the amount of damage is primarily for the jury. While the amount of the verdict may be relatively large, it is not so large as to shock the court's conscience or sense of justice. It will not be set aside.

### 2. Applicability of the Safety Appliance Act

At the close of all the evidence, I took from the jury the question of the applicability of the Safety Appliance Act and instructed that if the admitted absence of the grabiron caused the plaintiff's injury, the jury should find for the plaintiff. During the course of the trial I excluded certain evidence, but I believe that the defendant presented the crux of its case on this point, perhaps in not as dramatic or full sense as it desired, but the skeleton was clearly defined. Defendant contends the instruction was error.

Viewing the evidence most favorably to the defendant, it shows this. The car Charlottesville was not equipped with a right-hand grabiron which is customarily used by yard men to support them when bending over to uncouple cars. The Charlottesville had been on a track in the Railroad's switching yard that is used both for storage and repair. It had been there "out of service" for some 13 days prior to the accident. A bad order tag had not been placed on the car, but it had undergone some minor electrical repairs unrelated to the missing grabiron. In the course of switching the Charlottesville from this track to the heavy repair track, the plaintiff, a member of the yard crew, was injured while uncoupling the Charlottesville from a string of cars. The Charlottesville and the other cars were moving at the time of the injury. It was to be uncoupled from the rest and carried by its momentum to the heavy repair track.

I held that under those facts Section 4 of the Safety Appliance Act, 45 U.S.C.A. § 4, applied as a matter of law. Section 4 provides in pertinent part:

"* * * it shall be unlawful for any railroad company *to use any car in interstate commerce* that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." (Emphasis added.)

The defendant contends that there was evidence from which the jury might find that the Charlottesville was not "in use". The argument must be that it was not "in use in interstate commerce". The defendant interprets these words to mean that if the car was out of service and undergoing repairs even though being moved incident to repair it is not "in use".

█ It is quite clear that when a car is withdrawn from service, at rest and in the process of repair, the Safety Appliance Act does not apply. New York C. & St. L. R. Co. v. Kelly, 7 Cir., 1934, 70 F.2d 548; Sherry v. Baltimore & Ohio R. Co., 6 Cir., 1929, 30 F.2d 487; Baltimore & Ohio R. Co. v. Hooven, 6 Cir., 1924, 297 F. 919; Netzer v. Northern Pac. Ry. Co., 1953, 238 Minn. 416, 57 N.W.2d 247; See the Boiler Inspection Act (45 U.S.C.A. § 22 et seq.) cases: Tisneros v. Chicago & N. W. Ry. Co., 7 Cir., 1952, 197 F.2d 466; Lyle v. Atchison, T. & S. F. Ry. Co., 7 Cir., 1949, 177 F.2d 221; Compton v. Southern Pac. Co., 1945, 70 Cal.App.2d 267, 161 P.2d 40.

This is highly sensible. If the carrier is to comply with the Act, defective equipment must be repaired. On the other hand, the Act is designed to protect railroad employees. These conflicting interests must be reconciled. The statute itself makes a start. If a car which has been properly equipped, but becomes defective while being used on the carrier's line and is in the process of being hauled from the place where the "equipment was first discovered to be defective * * * to the nearest available point where such car can be repaired" the criminal penalties provided by the Act do not apply, but the Act does apply in civil actions. 45 U.S.C.A. § 13.

█ It is in the middle area, between these two points, where the difficulties

arise. First the statute—Section 4 sets up a specific requirement for grabirons "for greater security to men in coupling and uncoupling cars." The applicability here differs from that of other sections of the Act which apply to use "on its line" 45 U.S.C.A. §§ 11, 23, or used "in moving interstate traffic" 45 U.S.C.A. §§ 1, 2, 17, or "used in interstate traffic". 45 U.S.C.A. § 5. Use on the line or in moving traffic is certainly more restrictive in application than use in interstate commerce. See Compton v. Southern Pacific Co., 1945, 70 Cal.App.2d 267, 161 P.2d 40. This car was in use in interstate commerce in a constitutional sense. The lack of a grabiron here caused an injury during the very operation—uncoupling—which the requirement of a grabiron was specifically designed to cover. The defendant would read the statute:

> " * * * it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars *unless the coupling or uncoupling is done incident to switching the car from one repair point to another".* (emphasis added)

Even though the defendant superimposes these words on the words "to use * * * in interstate commerce", I do not believe that this section of the Act was meant to be so restricted.

Merely taking the car "out of service" for the purpose of making repairs does not make the Act inapplicable. Texas & Pacific R. Co. v. Rigsby, 1916, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874. In Rigsby, a defective car had been placed out of service marked with a "bad order" tag and was waiting on a spur track for some days. The repair shops were on the opposite side of the main track from the spur track. A member of the yard crew was injured while the defective car was being switched with some other "bad order" cars to the main track preparatory to switching them to the repair shops.

The critical question here is whether Section 4 of the Act applies in switching a car removed from service, from a spur track, where minor repairs unrelated to the defect which caused the injury are made, to another place of repair. The cases, in their language at least, make the question of whether the car *has reached* the repair point as determinative of the applicability of the Act. If it has they say the Act is inapplicable. If it has not but is rather "in the process of being removed to the repair point", the Act is applicable. But these cases uniformly discuss the problem in relation to Section 11 of the Act which is applicable where a carrier "haul[s] or permit[s] to be hauled or *used on its line"* a defective car. Even Kaminski v. Chicago, M., St. P. & P. R. Co., 1930, 180 Minn. 519, 231 N.W. 189, which involves a defective grabiron used in uncoupling cars talks as if Section 11 were the applicable section.

It may be that a car on a repair track for the purpose of repairs or in a yard used exclusively for repair is not "used on its line" but this is a wholly different thing from whether such a car is in "use * * * in interstate commerce".

In any event, these cases, with the possible exception of the Minnesota case —Kaminski, do not cover the situation before me. The factual situation here differs from Rigsby in that there no repairs had been made on the spur. Is this critical?

Some federal courts have read Rigsby as based on the theory that intermediate shifting at the repair point yard is part of a unitary journey to the precise point of actual repair and therefore within Section 13 which would make the Act applicable in civil actions. McCalmont v. Penn. R. Co., 6 Cir., 1922, 283 F. 736; Sherry v. Baltimore & Ohio R. Co., 6 Cir., 1929, 30 F.2d 487.

Other courts have placed the repair point at a yard devoted exclusively for repairs, Kaminski v. Chicago, M., St. P. & P. R. Co., supra, or at the point where

it is taken out of service and placed on tracks used exclusively for repairs. New York C. & St. L. R. Co. v. Kelly, 7 Cir., 1934, 70 F.2d 548, 550. The Kelly case says that "mere shifting of cars within the place of repair" does not put the car in use. But in Kelly the car was not being moved at the time of the injury. In Kaminski the injury occurred because of a defective grabiron while the cars were being switched in a yard devoted exclusively to repairs.

The defendant reads Rigsby as a case in which the cars had not yet reached the repair point. For this purpose he gives the repair point a restricted meaning. There the cars were on the spur track for the sole purpose of waiting to go to the shop. They had been withdrawn from service. For the purposes of this case the defendant reads repair point broadly. Here, he says, the car reached the repair point when it was placed out of service and minor electrical repairs were performed on a siding used both for repair and storage in a yard which is actively used in making up trains for interstate service. By his argument, the result in Rigsby would be different had some minor repairs unrelated to the defect which caused the injury been made on the spur track.

I do not believe that the result depends upon such a quibble entirely unrelated to the injury or to the repair of the defective part which caused it. Even if we carry this repair point analogy to the bitter end, the track where the electrical repairs were made might be the repair point with regard to those repairs but it certainly was not the repair point for the defective grabiron. The Charlottesville was at the time of injury being taken to the grabiron repair point. Although in Kaminski the cars were in a yard devoted entirely to repair, that case may be contrary. I am not bound by it. As I view it, section 4 was designed to protect yard men in just such an operation as this. The car was in use in interstate commerce even though being switched to the heavy repair track. That it may not have been

in use in moving interstate traffic or in use on the carrier's line is immaterial. The Act applies as a matter of law.

It is ordered that the motion for a new trial be and is hereby denied.