**KAM KOON WAN et al. v. E. E. BLACK, Limited.**

No. 12677.

United States Court of Appeals
Ninth Circuit.

April 13, 1951.

Samuel Landau, Honolulu, T. H. (Alfred G. Goldberg and Saul Cooper (of Padway, Goldberg & Previant), Milwaukee, Wis., of counsel), for appellants.

J. Garner Anthony, William F. Quinn, Honolulu, T. H. (Robertson, Castle & Anthony, Honolulu, T. H., of counsel), for appellee.

William S. Tyson, Sol., U. S. Dept. of Labor, Bessie Margolin, Asst. Sol., William A. Lowe and Helen Grundstein, Attys., U. S. Dept. of Labor, Washington, D. C., Kenneth C. Robertson, Regional Atty., U. S. Dept. of Labor, San Francisco, Cal., for Maurice J. Tobin, Secretary of Labor, U. S. Dept. of Labor, as amicus curiae.

Before BONE and ORR, Circuit Judges, and MATHES, District Judge.

MATHES, District Judge.

Plaintiffs brought suit under the Fair Labor Standards Act of 1938, 52 Stat. 1060, as amended, 29 U.S.C.A. § 201 et seq. for overtime benefits allegedly accruing to them during the six-year period preceding November 14, 1945, the date of commencement of the action. 28 U.S.C.A. § 1337.

Defendant denied that the activities for which overtime compensation was sought were within the coverage of the Act, and alleged that in any event plaintiffs had been paid time and one-half for all overtime since November 10, 1943.

Following enactment of the Portal-to-Portal Act of 1947 plaintiffs amended their complaint to allege facts requisite to jurisdiction of the subject matter. 61 Stat. 85, 29 U.S.C.A. § 252; Tipton v. Bearl Sprott Co., 9 Cir., 1949, 175 F.2d 432, 436. Defendant thereupon amended its answer to assert that plaintiffs' claims for the period December 7, 1941 to November 10, 1943 were barred by § 9 of the Portal-to-Portal Act, 61 Stat. 88, 29 U.S.C.A. § 258, since defendant's failure to pay overtime compensation required by the Fair Labor Standards Act during that period was "in good faith in conformity with and in reliance on" the orders of the Military Governor of Hawaii.

The district court thereafter rendered partial summary judgment, Fed.R.Civ.P. 56(c, d), 28 U.S.C.A. denying recovery for the period subsequent to December 7, 1941, thus sustaining the defenses of payment and good-faith compliance with the orders of the military governor. D. C. Hawaii 1948, 75 F.Supp. 553. As to the remainder of the six-year period—November 14, 1939 to December 7, 1941—the issue of coverage was later determined upon trial. From judgment entered following the trial plaintiffs appeal. See Kam Koon Wan v. E. E. Black, Ltd., 9 Cir., 1950, 182 F.2d 146.

During the six-year period of limitations applicable to this action, November 14, 1939 to November 14, 1945, Hawaii Rev. Laws § 10421 (1945); Culver v. Bell & Loffland, 9 Cir., 1944, 146 F.2d 29, appellee was engaged in the construction business in Hawaii, contracting with private individuals, the local government, and the federal government.

December 7, 1941 the Governor of Hawaii placed the territory under martial law, Hawaiian Organic Act 1900, § 67, 31 Stat. 153, 48 U.S.C.A. § 532. The governor further authorized and requested the "Commanding General, Hawaiian Department * * * during the present emergency and until the danger of invasion is removed, to exercise all the [civil] powers normally exercised by me as governor * * * and * * * to exercise the powers normally exercised by judicial officers and employees of this territory * * and such other and further powers as the emergency may require."

The general thereupon proclaimed: "* * * I have this day assumed the position of military governor of Hawaii, and have taken charge of the government of the Territory * * *." [See, as to martial law in Hawaii: King, 30 Calif.L. Rev. 599 (1942); Anthony, 30 Calif.L.Rev. 371 (1942), 31 Calif.L.Rev. 477 (1943), 57 Yale L.J. 27 (1947); Frank, 44 Col.L.Rev. 639 (1944).] Martial law in Hawaii was terminated by the President on October 19, 1944. Proclamation 2627, 9 F.R. 12831, 3 Code Fed.Regs. 1944 Supp.Proc. 2627, 58 Stat. 1158.

The Fair Labor Standards Act of 1938 extends to employment in Hawaii, see Waialua Agr. Co. v. Maneja, 9 Cir., 1949, 178 F.2d 603, 608 and provides of course for payment in applicable cases of time and one-half for overtime in excess of forty hours per week. 52 Stat. 1063, as amended, 29 U.S.C.A. § 207. By General Orders No. 38 issued December 20, 1941 the military governor ordered "All wage rates to be frozen as of December 7, 1941 * * *. The normal working day shall be 8 hours, and all hours worked in excess of 8 hours will be paid at the rate of 1½ times the regular rate." No mention was made of the "normal" forty-hour work week contemplated by the Fair Labor Standards Act.

On March 31, 1942 a new labor order [General Orders No. 91] was promulgated designating "Revised Wage Schedule No. 9, U. S. Navy Contractors, Pacific Naval Air Bases," as the standard wage scale for work performed on army and navy projects; and providing that "Overtime at the rate of one and one-half the regular rate will be paid for overtime in excess of forty-four (44) hours, or in excess of eight hours in any one day."

General Orders No. 40 issued November 1, 1943 provided that employees on War Department or Navy Department projects "shall be paid overtime at the rate of one and one-half the regular rate, for overtime in excess of forty (40) hours per week, or in excess of eight (8) hours in any one day * * *."

Thus it was not until November 1, 1943 that the orders of the military governor permitted payment of overtime compensation in accordance with the Fair Labor Standards Act. Nevertheless both General Orders Nos. 91 and 40 contained the interesting provision that: "Nothing herein shall be construed as superseding or in conflict with the provisions of the Fair Labor Standards Act of 1938 * * *."

Section 9 of the Portal-to-Portal Act of 1947, 61 Stat. 88, 29 U.S.C.A. § 258 provides that: "In any action * * * commenced prior to * * * the enactment of this Act * * * no employer shall be subject to any liability * * * for * * * failure * * * to pay * * * overtime compensation under the Fair Labor Standards Act of 1938 * * * if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged."

Appellants contend that the military governor did not have power to act as the highest administrative authority on behalf of the United States, but only as the "alter ego" of the territorial government, and that the military governor was not therefore an "agency of the United States".

"The authority to act with the sanction of government behind it determines whether or not a governmental agency exists. The form the agency takes, or the function it performs are not determinative of the question * * *." Lassiter v. Guy F. Atkinson Co., 9 Cir., 1949, 176 F.2d 984, 991. The military governor, as the "Commanding General, Hawaiian Department," acted with the authority, actual or apparent, of the military arm of the federal government. See Duncan v. Kahanamoku, 1946, 327 U.S. 304, 315, 66 S.Ct. 606, 90 L.Ed. 688. And as found by the district court, he exercised powers entirely distinct from those of the former civilian government.

We therefore agree with the district court that the military governor was an "agency of the United States" within the meaning of § 9 of the Act, 29 U.S.C.A. 258, Lassiter v. Guy F. Atkinson Co., supra, 176 F.2d at pages 991, 992 n. 7; H.R.Rep. 71, 80th Cong., 1st Sess. (1947), U.S. Code Cong.Serv. 1036 (1947).

Appellants further urge that the defense provided by § 9, 29 U.S.C.A. § 258 cannot be determined by affidavits on motion for summary judgment, Fed.R.Civ. P. 56, and that in all events the evidence does not support the finding of "good-faith" reliance upon orders of the military governor.

A defense under § 9, 29 U.S.C.A. § 258, as an affirmative defense, may be determined on motion for summary judgment, and may be "proved" by evidence cognizable on such a motion provided there exists "no genuine issue as to any material fact". Fed.R.Civ.P. 56(c). No such issue exists here since the facts asserted in the affidavits filed to establish the defense stand uncontroverted.

The test of an employer's good faith in relying upon an administrative order is whether he acted as a reasonably prudent man would have acted under similar circumstances. Lassiter v. Guy F. Atkinson Co., supra, 176 F.2d at page 993; 29 Code Fed.Regs. § 790.15; see Skidmore v. Swift & Co., 1944, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124. During the period December 7, 1941 to November 10, 1943, 80% of all work done by appellee was upon contracts with agencies of the United States. Appellee was in the category of a contractor and subcontractor with the federal government and clearly subject to the orders of the military governor prescribing overtime compensation for work performed on army and navy projects. Violations of military orders were punishable by a military tribunal as it saw fit. We cannot say as a matter of law that the appellee did not act as a reasonably prudent man in complying with the orders. See McColloch, Judge Metzger and the Military, 35 A.B.A.J. 365 (1949); Armstrong, Martial Law in Hawaii, 29 A.B.A.J. 698, 701 (1943).

But appellants argue that the declaration "Nothing herein shall be construed as superseding or in conflict with the provisions of the Fair Labor Standards Act * * *", set forth in General Orders No. 91 promulgated March 31, 1942, should have put appellee on inquiry as to whether the Act or the military orders governed. See 29 Code Fed.Regs. § 790.15. That declaration was also embodied in General Orders No. 40 of November 1, 1943 prescribing overtime compensation equal to that provided by the Act. See 52 Stat. 1063, as amended, 29 U.S.C.A. § 207. In the circumstances we regard the quoted provision as nothing more than a determination by fiat that employers such as appellee "could safely disregard the provisions of that Act." Lassiter v. Guy F. Atkinson Co., supra, 176 F.2d at page 995.

Appellants finally contend the district court erred in ruling that certain of their activities during the period November 14, 1939 to December 7, 1941 were not covered by the Fair Labor Standards Act. These activities relate to construction: for the federal government of (1) additions to battery-charging distribution system, Pearl Harbor Submarine Base, (2) servicing landing mat at Ewa, (3) mooring mast area at Pearl Harbor, and (4) radio shelters for the Army; for the territorial government of (5) new wharf at Port Allen; for private industry of (6) new wharf for Inter-Island Steam Navigation Co., (7) new pier and shed, Pier 29, for Inter-Island Steam Navigation Co., (8) new telephone substations, and (9) digging and filling trenches for Hawaiian Electric Co. and Honolulu Gas Co.

The Act provides time and one-half for overtime only to those employees "engaged in commerce or in the production of goods for commerce". 52 Stat. 1063, as amended, 29 U.S.C.A. § 207. Coverage of the Act depends upon the character of the employee's activities, and not upon the nature of his employer's business. Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 132, 63 S.Ct. 494, 87 L.Ed. 656.

An employee of a construction contractor is held to be "engaged in commerce" if his employment involves repair, improvement or reconstruction of existing instrumentalities of commerce, but not if the employment relates to construction of entirely new facilities. Scholl v. McWilliams Dredging Co., 2 Cir., 1948, 169 F.2d 729, 732; Laudadio v. White Const. Co., 2 Cir., 1947, 163 F.2d 383, 386; Ritch v. Puget Sound Bridge Dredging Co., 9 Cir., 1946, 156 F.2d 334, 337; Walling v. Patton-Tulley Transp. Co., 6 Cir., 1943, 134 F.2d 945, 947. With the exception of the additional battery-charging facilities at the submarine base, the district court found

that appellants' activities on the above projects related to new construction. The finding is not clearly erroneous and so must be affirmed. Fed.R.Civ.P. 52(a).

 The district court concluded appellants' activities in the construction of additional battery-charging facilities were not covered because that employment constituted "work for the government upon [a] military * * * [reservation]." The work is not necessarily outside the scope of the Act for the reason stated. The question of coverage must turn on whether appellants were "engaged in commerce or in the production of goods for commerce." Powell v. United States Cartridge Co., 1950, 339 U.S. 497, 511–512, 70 S.Ct. 755, 763, 94 L.Ed. 1017.

Appellants claim that in performing such work they were "engaged in commerce". No claim is made that they were thus "engaged * * * in the production of goods for commerce". 52 Stat. 1060, 1063, as amended, 29 U.S.C.A. §§ 203, 207.

 It is not necessary to remand the case for further findings on this issue, see Rossiter v. Vogel, 2 Cir., 1945, 148 F.2d 292, 293; Hurwitz v. Hurwitz, 1943, 78 U.S.App.D.C. 66, 136 F.2d 796, 799, 148 A.L.R. 226, since we may judicially notice the fact, see 9 Wigmore, Evidence § 2580 (3d Ed. 1940), that navy submarines used storage batteries during the period in question to supply electric power for operating underwater, see 21 Encyc.Britt. 495 (1947), and it was essential that such batteries be serviced and recharged from time to time in order to continue to supply that electric power, see 1 id. 106. Thus the battery-charging facilities in question were used to service the means of propelling submarines.

This court has held that navy combat vessels may operate "in commerce." See Ritch v. Puget Sound Dredging Co., supra, 156 F.2d at pages 335–336; cf. Divins v. Hazeltine Electronics Corp., 2 Cir., 1947, 163 F.2d 100, 102. But we have always recognized that "In the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority." McLeod v. Threlkeld, 1943, 319 U.S. 491, 493, 63 S.Ct. 1248, 1249, 87 L.Ed. 1538.

 The test is "not whether the employee's activities affect or indirectly relate to * * * commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." Id., 319 U.S. at page 497, 63 S.Ct. at page 1251. Such an indefinite standard is not easy of application. We look for guidance to the decided cases, including those under the Federal Employers' Liability Act 35 Stat. 65, as amended, 45 U.S.C.A. § 51 et seq. See McLeod v. Threlkeld, supra, 319 U.S. at pages 494–495, 63 S.Ct. at page 1250; Overstreet v. North Shore Corp., supra, 318 U.S. at pages 131–132, 63 S.Ct. at page 498.

 The most that can be said of appellants' claim of being "engaged in commerce" while constructing additions to the battery-charging system at Pearl Harbor Submarine Base is that such work improved an existing facility used to service an existing instrumentality "in commerce." See Shanks v. Delaware, L. & W. R. Co., 1916, 239 U.S. 556, 36 S.Ct. 188, 60 L.Ed. 436. We hold that such activities were "too remote from [commerce] to be practically a part of it". See Id., 239 U.S. at page 560, 36 S.Ct. at page 190; cf. Overstreet v. North Shore Corp., supra, 318 U.S. at page 130, 63 S.Ct. at page 497.

The district court was correct then in deciding that the employment in question at the submarine base was not within the coverage of the Fair Labor Standards Act.

"In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 1937, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224. Accordingly the judgment of the district court is affirmed.