**MITCHELL, Secretary of Labor**

**v.**

**HOUSEHOLD FINANCE CORP. et al.**
**No. 10978.**

United States Court of Appeals
Third Circuit.

Argued Oct. 20, 1953.

Decided Dec. 3, 1953.

Rehearing Denied Jan. 14, 1954.

Harold H. Levin, New York City, Robert H. Kleeb, Philadelphia, Pa. (Souser & Schumacker, Philadelphia, Pa., Proskauer, Rose, Goetz & Mendelsohn, New York City, Hubachek & Kelly, Chicago,

Ill., Kenneth Souser, Philadelphia, Pa., Burton A. Zorn, New York City, Charles S. Kelly, Chicago, Ill., Joseph J. Jacobs, New York City, on the brief), for appellants.

Bessie Margolin, Washington, D. C. (Stuart Rothman, Sol., Jeter S. Ray, Acting Sol., William A. Lowe, Harold S. Saxe, Attys., United States Department of Labor, Washington, D. C., Ernest N. Votaw, Regional Atty., United States Department of Labor, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the applicability of the Fair Labor Standards Act [1] to the employees in defendant's Lancaster, Pennsylvania, office. Defendant admittedly has not complied with the provisions of that statute. The district court held the Act applicable and enjoined defendant from further violations. Tobin v. Household Finance Corporation, D.C. E.D.Pa.1952, 106 F.Supp. 541. [2]

There are three possible questions involved. First, are the defendant's employees engaged in commerce within the meaning of the statute? This, of course, means engaged in interstate or foreign commerce. [3] Second, are they engaged in the production of goods for commerce? Third, if the answer to either of the first two is yes, are they within the exception which takes out of the statute those engaged in retail or service establishments?

The only place where there is conflict in the testimony is with regard to the exception. The facts concerning the way in which the defendant's business is carried on were agreed to by the parties. It appears that the defendant Household Finance Corporation is a Delaware corporation with its main office in Chicago. Defendant and its subsidiaries conduct their business in 490 offices located in twenty-eight states and eight Canadian provinces. The Lancaster office makes loans up to $1,500, [4] and is licensed by the State of Pennsylvania. [5] These loans are made to Pennsylvania

---

**1.** "Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

"As used in sections 201–219 of this title——

" 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

\*      \*      \*      \*      \*      \*

" 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

" 'Produced' means produced, manufac-

tured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C.A. §§ 203 (b, i, j), 207(a).

**2.** John P. Mitchell, Secretary of Labor, has been substituted as plaintiff under Rule 28(5) of this court.

**3.** See the statutory definition of "commerce," note 1 supra.

**4.** Household Finance itself makes loans up to $300. Its subsidiary, Household Consumer Discount Company, a Pennsylvania corporation, makes loans from $300 to $1,-500. The Lancaster employees work for both corporations but are carried on the payroll of Household Finance. Since there has been no suggestion that this distinction will affect our result, the two organizations will be treated as one.

**5.** See Pa.Stat.Ann. tit. 7, §§ 751 to 761–19.

residents of the Lancaster area [6] to cover medical bills, rent, taxes and similar expenses. The office consists of five stenographer-cashiers, four "outside representatives" or investigators, and an assistant manager. These employees are supervised by a manager who is, in turn, responsible to higher corporate officials.[7] As required by Pennsylvania law, loan registers and journals, payroll and other reports, bank reconciliation statements, time sheets and other records are kept and copies mailed daily or at other regular intervals to the Chicago office for use in its audit control system. In addition, the two offices correspond generally on company matters. The Chicago office provides the Lancaster office with bank drafts which the Lancaster manager cashes as funds are needed. Normally, two drafts are used each month. As the Lancaster bank account increases, checks for the excess are sent to Chicago. This occurs approximately every ten days.

■ Preliminary to the three questions above stated is a broader one, namely, whether the defendant's activities constitute "commerce" as that term is used in the Act. Defendant does not seriously contend that the sum total of its business does not make up an interstate commerce undertaking. We think that it clearly does constitute interstate business and we think that the insurance case cited for so many other propositions in the course of the argument here is a general authority for that position. See United States v. South-Eastern Underwriters Ass'n, 1944, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440.

The question whether the employees in this Lancaster office are engaged in the preparation of goods for commerce will be considered first because it is the simpler. Office employees prepare reports, either the original or carbon of which is sent to Chicago. About every ten days a draft is sent to the home office in Chicago which represents the excess of cash received in the Lancaster office over the necessary amount kept there for day to day business. Do the letters, the carbons of the records and the like constitute "goods" in interstate commerce? If they do, there is good ground for holding that these girls who typewrite letters in Lancaster are preparing goods for commerce. But this Circuit has held, and the Second Circuit has held, that the preparation and sending of reports by employees from an office of an employer across a state line does not constitute the preparation of goods for commerce on the part of the employees who do the preparing and the sending of the reports. Kelly v. Ford, Bacon & Davis, 3 Cir., 1947, 162 F.2d 555; Bozant v. Bank of New York, 2 Cir., 1946, 156 F.2d 787.

The Bozant case is particularly interesting in this connection. There the court, through Judge Learned Hand, distinguished between reports and the like sent across state lines and documents which are themselves considered property. The people who prepared the first were not, the court said, engaged in preparation of goods for commerce. But bills of exchange, bonds and other mercantile instruments are considered "goods" and the people who prepared these for mailing elsewhere were engaged in the preparation of goods for commerce.

■■ In our case the "goods" within the distinction just set out consist of about three drafts a month. We do not think that a clerk who prepares three drafts a month for the manager's signature is engaged in the preparation of goods for commerce. If she is, every Philadelphia business man who has his secretary make out a check to pay a New York merchant for a clothing purchase by his wife is so engaged. Surely the Act was not meant to apply to people who perform an occasional act which results in the transfer of goods across state lines.

6. About 1% of the business of the Lancaster office consists of loans transferred to it when debtors move to the area from other states.

7. It is agreed that the manager and the assistant manager are exempt from the provisions of the Act.

So much for the claim that these office employees are engaged in the preparation of goods for commerce. The main point of the case is whether these employees are themselves engaged in commerce. We are instructed that the application of the statute to those engaged in the preparation of goods for commerce goes further than the determination of those who are engaged in commerce. Armour & Co. v. Wantock, 1944, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; Carrigan v. Provident Trust Co., 3 Cir., 1946, 153 F.2d 74; Tobin v. Girard Properties, Inc., 5 Cir., 1953, 206 F.2d 524. We are also advised that the Congress did not exercise all of its interstate commerce power in this statute because the Act does not apply to that which "affects" commerce but that it does go the whole length as to those engaged in commerce. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. We are likewise advised, through a whole series of Supreme Court decisions, that it is not the business of the employer which is determinative here. Granted that the employer is engaged in commerce, the question as to the coverage of the Act becomes one with regard to the activities of the particular employee concerned. Kirschbaum Co. v. Walling, supra; Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Overstreet v. North Shore Corp., supra; Mabee v. White Plains Publishing Co., 1946, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607.

In this case we have the enterprise as a whole one of commerce, by hypothesis. We have facts from which it is quite clear that the employees whose activities are involved are necessary to the conduct of the employer's business in the Lancaster, Pennsylvania area. The stipulation shows what these employees do. The stenographer-cashiers take dictation, prepare and type records, type correspondence, and the papers for bank deposits and new loans, compute the interest and principal on loans, make and receive payments, and perform all the other common duties of office personnel. The outside representatives investigate the credit of loan applicants and attempt to persuade delinquent borrowers to complete payments. None of these employees does any work outside the Lancaster area. None deals with borrowers from other areas.

We think it clear under the Supreme Court decisions that employees are not brought under the Act by virtue of the employer's business being interstate and the activities of the employees being necessary to that business. It takes more than that to bring the employees within the coverage of the Act. They must be either in the channels of commerce or so intimately related to commerce so as to be in practice or legal contemplation a part of it. The test of applicability is strikingly shown in the Supreme Court's decision in McLeod v. Threlkeld, 1943, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, because the strong minority there disagreed with the majority on how broadly the statute should be construed. The point was necessarily before the Court because of this difference of opinion. Mr. Justice Murphy protested against what he considered the incorrect narrowing of the statute. Majority language against which the protest was lodged is as follows:

"The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase, 'production of goods for commerce.' * * * It is the work of the employee which is decisive." 319 U.S. at page 497, 63 S.Ct. at page 1251. (footnotes omitted).

This test makes for us the authoritative standard for coverage of the Act so

far as it is to be applicable to those engaged in commerce. Subsequent decisions have not modified it or departed from it. See, e. g., Mabee v. White Plains Publishing Co., supra; Carrigan v. Provident Trust Co., supra; Scholl v. McWilliams Dredging Co., 2 Cir., 1948, 169 F.2d 729; Kam Koon Wan v. E. E. Black, Ltd., 9 Cir., 1951, 188 F.2d 558.

We were much pressed in argument with the famous insurance case, United States v. South-Eastern Underwriters Ass'n, 1944, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440. That case held that the insurance business was interstate commerce and its activities in connection therewith came within the purview of the Sherman Act, 15 U.S.C.A. § 1 et seq. We think that the most that case tends to establish when applied to the set of facts before us is that the small loan business, conducted as it is on a nationwide basis, is interstate commerce. That was the assumption made at the beginning of this opinion. The decision in the insurance case does not and cannot give us any instruction with regard to the coverage by the Fair Labor Standards Act of individual employees of an insurance company such as those engaged in soliciting insurance, settling claims, and the like. It is simply outside the orbit of the question now before us.

██ Anybody who has been in the law a few years knows that it is one thing to frame a "test" and another thing to apply that formula to the many-colored sets of facts which come up in litigation. We do not think this is a difficult case, however, for the application of the Supreme Court test. The parties have aided us by stipulating everything, so far as we can see, which is essential to understand the nature of the business done. When one learns what these employees do and then looks at the Supreme Court's test of what brings the employee within the Act, it seems clear that these employees engaged in the defendant's business in Lancaster, Pennsylvania, are not within the Act.

Our view of the case makes it unnecessary to go into the question whether the defendant is within the "retail or service" exception to the statute.

The judgment of the district court will be reversed.

### On Petition for Rehearing

Before BIGGS, Chief Judge, and MARIS, GOODRICH, KALODNER, and STALEY, Circuit Judges.

PER CURIAM.

After due consideration the petition for rehearing in the above-entitled case is hereby denied.

BIGGS, Chief Judge (dissenting).

I would grant the petition for rehearing and have rehearing before the court en banc. I am of the opinion that the court has construed too narrowly the applicable provisions of the Fair Labor Standards Act, 29 U.S.C.A. §§ 203(b, i, j), 207(a). I am authorized to state that Judge STALEY concurs in the views expressed in this dissent.