**BILLEAUDEAU et al.**

v.

**TEMPLE ASSOCIATES, Inc.**

**No. 14931.**

United States Court of Appeals
Fifth Circuit.

June 18, 1954.

Albert Tate, Jr., Tate & Fusilier, Ville Platte, La., for appellants.

Stuart Rothman, Sol., Bessie Margolin, Chief of Appellate Litigation, William W.

Watson, Atty., U. S. Department of Labor, Washington, D. C., Earl Street, Regional Atty., U. S. Department of Labor, Dallas, Tex., for James P. Mitchell, Secretary of Labor, amicus curiae.

Ned Shands, Jr., Lufkin, Tex., Dubuisson & Dubuisson, Opelousas, La., Peavy & Shands, Lufkin, Tex., for appellee.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and WRIGHT, District Judge.

WRIGHT, District Judge.

Appellants, plaintiffs below, appealed from a summary judgment denying their claims under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., for minimum wages and overtime pay. The actions arose from work performed in connection with the construction of two low-rent housing projects pursuant to a contract entered into between appellee and the Housing Authority of the town of Ville Platte, Louisiana. The question presented is whether the appellants, who were watchmen on the job site, are covered by the Act.

Appellants allege they were paid only $35 for a work week of 84 hours, far less than the minimum hourly rate of 75 cents plus 1½ times the minimum for all hours over 40 worked per week, as prescribed by the Act. They sued for the difference plus interest, liquidated damages, and attorney's fees. Appellee moved to dismiss and for summary judgment on the ground that appellants are not covered by the Act, and the court below granted the motion for summary judgment. Since the affidavits filed in support of the motion for summary judgment do not traverse the allegations of the complaint on the issue of coverage, the allegations of the complaint must be taken as true for the purpose of this appeal.

Appellants contend [1] that they were "engaged in commerce" because their duties included the receipt and checking of building material shipped to the construction site from points outside the state, that they were engaged in "production of goods for commerce" because, as part of their duties, they maintained a watch over the construction office of appellee in which were maintained and prepared records regularly shipped to and from the construction site to points outside of Louisiana. They contend that, while admittedly all employees engaged on a local construction project are not covered by the Act, employees such as themselves are.

The court below held that the plaintiffs were not covered by the Act on the authority of Murphey v. Reed, 335 U.S. 865, 69 S.Ct. 105, 93 L.Ed. 410, which vacated the judgment of this court and remanded the case to the District Court with instructions "to dismiss those causes of action involving solely construction work, and to reconsider the remaining causes of action in the light of the decision of this Court in Kennedy, et al., v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031 [92 L.Ed. 1347]." In Murphey v. Reed, a construction contract and a maintenance and operation contract were involved, the construction contract cover-

---

[1]. Paragraph 7 of the complaint reads:

"At all times herein set forth, defendant corporation employed the plaintiffs in the capacity of day and night guards or night watchmen; specifically, plaintiffs did always in the course of their duties maintain a guard or watch over the office of defendant maintained on the construction site, in which office were maintained pay-roll records, time sheets, and other matters pertaining to the labor force, which were regularly shipped to Dibold, Texas, and to other points outside of Louisiana, as well as invoices, plans, specifications, and other matters and materials regularly shipped to and from Ville Platte, Louisiana, and points outside of Louisiana; in addition, as part of their duties, plaintiffs often received lumber shipped from Dibold, Texas, and the invoices therefor, and guarded the Texas employees unloading same and were responsible for filing the invoices for such lumber and other materials received in the office-building on the premises, and were often present in the course of their duties when other shipments or supplies were being unloaded or loaded for shipment to and from points outside of Louisiana."

ing installations appropriate for Navy encampments, and the maintenance and operation contract relating to the trans-shipment of Navy materiel to advance bases in various war theaters. In its consideration of the case, this court treated the workers on the construction contract and the workers on the maintenance and operation contract separately, but held that both were without coverage of the Act. Employees similar to appellants here were among those on the construction contract there. While it cannot be said with certainty that the Supreme Court intended to deny recovery to such employees, the language used in vacating the judgment of this court is certainly susceptible of such interpretation, as the court below held. If the Supreme Court intended to exclude from coverage only those employees who physically participated in the actual construction work, certainly more apt language would have been adopted.

But we do not need to rely on Murphey v. Reed, supra, in affirming the District Court here. As in Murphey v. Reed, this case has been brought out of focus by determined and earnest efforts on the part of both sides to consider it under the original construction doctrine relating to the Fair Labor Standards Act. That doctrine is entirely inapposite. That doctrine relates to new construction which will, when finished, become an artery of commerce or will be used in the production of goods for commerce. In other words, the new construction doctrine applies to interstate roads and buildings which will be used to house the manufacture of commodities to be shipped interstate. There is nothing whatever interstate about the construction on which appellants were employed. Appellee was simply building housing units so that the people of the little town of Ville Platte, Louisiana, could have some place in which to live. Nothing, it seems to us, could be more local and less integrated in interstate commerce. Consequently in applying the Act and interpreting the jurisprudence, this central fact must be considered. Thus we put to one side those cases decided under the original construction doctrine,[2] as well as those cases involving maintenance workers on buildings the tenants in which may or may not be engaged in interstate commerce,[3] and recognize this case for what it really is—an attempt to extend coverage under the Act to at least some workers connected with the construction of homes.

The Supreme Court on two occasions has recognized that the scope of the Fair Labor Standards Act is not coextensive with the limits of the power of Congress over commerce. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1119, 86 L.Ed. 1638; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1249, 187 L.Ed. 1538. In Kirschbaum, the court said, "The history of the legislation leaves no doubt that Congress chose not to enter areas which it might have occupied." And in McLeod, "Congress did not intend that the regulation of hours and wages should extend to the

---

2. Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751; J. F. Fitzgerald Construction Co., v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Pedersen v. J. F. Fitzgerald Construction Co., 318 U.S. 740, 63 S.Ct. 558, 87 L.Ed. 1119; Van Klaveren v. Killian-House Co., 5 Cir., 210 F.2d 510; Koepfle v. Garavaglia, 6 Cir., 200 F.2d 191; Scholl v. McWilliams Dredging Co., 2 Cir., 169 F.2d 729; Laudadio v. White Const. Co., 2 Cir., 163 F.2d 383; Nieves v. Standard Dredging Corp., 1 Cir., 152 F.2d 719.

3. 10 East 40th Street Building, Inc., v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865; Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Cochran v. Florida National Building Corp., 5 Cir., 134 F.2d 615; Lofther v. First Nat. Bank of Chicago, 7 Cir., 138 F.2d 299; Johnson v. Masonic Bldg. Co., 5 Cir., 138 F.2d 817; Carrigan v. Provident Trust Co. of Philadelphia, 3 Cir., 153 F.2d 74; Addison v. Commercial Nat. Bank in Shreveport, 5 Cir., 165 F.2d 937.

furthest reaches of federal authority." The Congress itself has emphasized this limitation by its amendment of 1949, limiting to some extent coverage under the Act. Amendment of October 26, 1949, Chapter 736, Section 3, 63 Stat. 911, 29 U.S.C.A. § 203(j).

Plaintiffs here seek to bring themselves under Section 3(j), 29 U.S. C.A. § 203(j), relating to production of goods for commerce, as well as Section 3(b), 29 U.S.C.A. § 203(b), relating to engagement in commerce itself. The theory under which the plaintiffs seek coverage under Section 3(j) is that they engaged in the production of goods for commerce by guarding appellee's office on the construction premises, in which office were prepared and maintained payroll records, time sheets, and other matters pertaining to the labor force, which were regularly shipped between appellee's home office in Dibold, Texas, and the office on the construction site in Ville Platte, Louisiana. But the exchange of documents between the home office in Texas and the construction office in Louisiana is not commerce as defined by the Act. Commerce has no application to the internal affairs of appellee. Commerce, as defined in the Act, does not include commerce with oneself. Mitchell v. Joyce Agency, 7 Cir., 211 F.2d 241. Moreover, the documents described do not come within the Act's definition of "goods." Section 3(i), 29 U.S.C.A. § 203 (i), defines goods as, "wares, products, commodities, merchandise, or articles or subjects of commerce of any character". Broad as that definition seems to be, it can hardly be said that it includes the payroll records and the time sheets of the company, prepared by that company for its own use. Consequently we hold that plaintiffs here, as watchmen of appellee's office on the construction site, are not engaged in the production of goods for commerce.

We then proceed to determine whether these plaintiffs are "engaged in commerce" under Section 3(b). It must be borne in mind that an important distinction exists between coverage under Section 3(j) and Section 3(b), coverage under Section 3(b) being much narrower. Tobin v. Girard Properties, 5 Cir., 206 F.2d 524; Mitchell v. Joyce Agency, supra; Carrigan v. Provident Trust Co. of Philadelphia, 3 Cir., 153 F.2d 74. In construing coverage under 3(b), the Supreme Court in McLeod v. Threlkeld, supra, held: "The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it."

Applying that test, this court concludes that watchmen on a local housing construction project who "often received lumber shipped from Dibold, Texas, and the invoices therefor, and guarded the Texas employees unloading same," are not so closely related to the movement of interstate commerce as to be a part of it. The effect, if any, such employees have on interstate commerce is, in our opinion, miniscule.

Affirmed.