James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

WELCOME WAGON, Inc., a Corporation, Defendant.

Civ. A. No. 2232.

United States District Court
W. D. Tennessee, W. D.

Nov. 3, 1954.

Jeter S. Ray and Marvin M. Tincher, Nashville, Tenn., for plaintiff.

Robert H. Stickley, Glenn M. Elliott, Memphis, Tenn., for defendant.

BOYD, District Judge.

Plaintiff brings this action to enjoin the Defendant from violating the provisions of Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act as

amended, 29 U.S.C.A. § 215(a) (2, 5). The cause came on for trial and the Court having heard the evidence and considered the stipulation of the parties, finds the facts and states the conclusions of law as follows:

### Findings of Fact

#### I.

The Court adopts the Stipulation of the parties, dated September 17, 1954, as its findings.

#### II.

The Defendant, Welcome Wagon, Inc., through employees called hostesses, is engaged in (1) offering a local consumer service to business establishments and (2) performing that service, pursuant to a written service contract, on behalf of the establishments subscribing to the service. Essentially the business of the Defendant consists of the activities of some four thousand housewives, (hostesses) representing local retail establishments on calls on families in the hostess' communities.

#### III.

The service contracts between Defendant and the subscribers are not bought or sold and do not provide for the production, sale or shipment of articles of commerce. They are contracts to perform a local service to a local subscriber, only in the territory set out in the subscriber's contract. They are nonassignable, executory and without exchange value.

Defendant obtains its revenue solely from calls made by its local hostess under its said contract. If no calls are made by the hostess the subscriber does not and is not required to pay any fee.

#### IV.

Soliciting establishments to use the service and the incidents of preparing and transmitting the service contracts to the appropriate divisional office is an occasional infrequent activity of the hostesses. On the average, a hostess will procure less than three service contracts a year.

#### V.

The overwhelming portion of the hostess' time is spent in rendering the Defendant's service to the 40,000 business establishments subscribing to Defendant's service, located in approximately 1,300 communities. All but a few of these establishments are engaged in local activities of a retail nature.

#### VI.

The service performed by Defendant's hostess in behalf of the subscribing business establishments consists of calls made by the hostess on families in her community to publicize her subscribers, to sell or cause to be sold their products or services, and to report to them on her activities in their behalf in making calls on said families.

#### VII.

The territory in which a hostess makes calls on behalf of a subscriber is set forth in that subscriber's service contract and is confined to the state of her residence and is always in close proximity to the town in which she resides.

#### VIII.

The service rendered by a hostess in her assigned territory is separate and apart from the activities of hostesses in other territories. Each territory is a separate unit for all practical purposes, and there is no integration of activities between the respective units.

#### IX.

The written reports (confidential daily reports) of the hostess to her subscribers are incidental to the calls made by her on families in her territory. These reports are not, and, under the service contract, cannot be sold, rented or supplied to others by the subscribers. These reports only set forth the names and addresses, etc., of the persons called upon by the hostess, together with such comments of the hostess on the trade experiences or buying habits of the local families as she thinks may be of interest to the subscribers.

## X.

The partial copies of the confidential daily report sent to the divisional office by the hostess are not mailed daily, but are frequently accumulated by the hostess for two or three weeks. These copies are used by the Defendant as a barometer of the activities of the hostesses in the areas where Defendant's service is rendered. They are not sent to the divisional office for billing or bookkeeping purposes and are not used for those purposes. In the Memphis divisional office the copies of the daily reports were, on occasion, referred to, to approximate a billing in the absence of the monthly control sheets; this is no longer done.

## XI.

Of the various intra-company forms set forth in Defendant's hostess instruction manuals only three are in significant use, viz.: (a) Partial copies of daily reports, (b) the monthly control sheets, and (c) the operating expense statement. All of these forms, as well as the other forms infrequently used, are incidental to the local activities of the hostess and are mailed by the hostess to her divisional office for Defendant's use in the internal management of its business. They are not sold, rented or supplied to others by the Defendant and do not have exchange value.

## XII.

The subscribers are billed monthly by the divisional office from the hostess' monthly control sheet for the services of the hostess. They remit payment directly to that office. Some hostesses, on rare occasions, may transmit a subscriber's monthly check to their divisional office. This is generally done as an accommodation to the subscriber. Of each 1,000 checks received from the subscribers at the divisional offices, not more than five are mailed by the hostesses to those offices.

## XIII.

The various instructions contained in the hostess instruction manual and the Defendant's policy booklet are not strictly enforced by the Defendant and often are not observed by the hostesses. The hostesses operate under loose and general supervision. The hostesses determine their own hours of work, the amount of time they will devote to any particular feature of their work and the days on which they will work. They are subject only to certain policies prescribed by the Defendant; in the main, these are a prohibition against the cutting of rates or representation of alcoholic beverages and tobacco interests.

## XIV.

Of the 40,000 subscribers represented by the Defendant, only 46 are represented by the Defendant in more than one state. No individual hostess, however, works in more than one state. The majority of these 46 subscribers are located in Bristol, Tennessee-Virginia, or Washington, D. C. where state lines cross normal trade territories. The overwhelming majority of the subscribers, represented by hostesses who represent one or more of said 46 subscribers, are business establishments engaged in local activities in close proximity to the town in which the hostess lives and in the state of the hostess' residence.

## XV.

The duties of the hostesses in New York and Tennessee are substantially the same as those of the hostesses in the other States of the Union; the only apparent difference being that the reports from the Tennessee and New York hostesses do not cross state lines, whereas, the reports of hostesses in other states must cross state lines to get to the divisional offices.

## XVI.

The hostess' functions on behalf of her Church and community organizations are combined with her services on behalf of her business subscribers. Her work is inseparably intertwined with her household duties, and hostesses have testified that it would be impossible for them to segregate their Welcome Wagon work from their other activities so as to

keep records of the time worked for the Defendant.

### XVII.

Defendant's business objective is the rendering of a local consumer service by its hostesses. The interstate transmissions, namely the reports, correspondence and occasional service contracts, are merely incidental to the performance of that local consumer service. The activities of the hostesses and field supervisors are not in the stream of commerce. Neither they nor their employer are engaged in the production of any articles of interstate commerce in the ordinary and accepted sense of that term.

### Conclusions of Law

### I.

The Court has jurisdiction of the parties hereto and of the subject matter of this action.

### II.

■ The burden is upon the Plaintiff as the one asserting coverage, to prove that Defendant's employees are engaged in commerce or in the production of goods for commerce. Schulte, Inc., v. Gangi, 328 U.S. 108, 120, 66 S.Ct. 925, 90 L.Ed. 1114; Mitchell v. Joyce Agency, Inc., 7 Cir., 211 F.2d 241, 244.

### III.

■ The burden is not sustained by pointing to some small incidental interstate activity of a fundamentally intrastate business. Plaintiff must establish that Defendant's employees spend a substantial portion of their time engaging in interstate commerce or regularly engage in the production of goods for interstate commerce. Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S. Ct. 332, 87 L.Ed. 460; Hunter v. Madison Ave. Corp., 6 Cir., 174 F.2d 164, 167; Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527, 530, certiorari denied 331 U.S. 812, 67 S.Ct. 1205, 91 L.Ed. 1832.

### IV.

■ In determining coverage, it is immaterial whether the employee is hired by one engaged in an interstate business, since it is the activities of the employee and not of the employer which are decisive. McLeod v. Threlkeld, 319 U.S. 491, 494, 63 S.Ct. 1248, 87 L.Ed. 1538; Walling v. Jacksonville Paper Co., 317 U.S. 564, 571–572, 63 S.Ct. 332, 87 L. Ed. 460; Mitchell v. Household Finance Corp., 3 Cir., 208 F.2d 667, rehearing denied 3 Cir., 208 F.2d 672.

### V.

■ The "commerce" referred to in the Act must be interstate commerce, and not all of the activities subject to the constitutional power of Congress over interstate commerce come within the scope of the Act. McLeod v. Threlkeld, 319 U. S. 491, 493, 63 S.Ct. 1248, 87 L.Ed. 1538; Kirschbaum v. Walling, 316 U.S. 517, 523, 62 S.Ct. 1116, 86 L.Ed. 1638.

### VI.

■ The "commerce" which underlies both the "engagement in commerce" and the "production of goods for commerce" has no application to the internal affairs of the employer. Billeaudeau v. Temple Associates, Inc., 5 Cir., 213 F.2d 707; Mitchell v. Joyce Agency, 7 Cir., 211 F. 2d 241.

### VII.

■ The interstate communications of the employees involved in this action with their employer are part of the internal affairs of the Defendant and hence not covered by the Act. Billeaudeau v. Temple Associates, Inc., 5 Cir., 213 F.2d 707; Mitchell v. Joyce Agency, 7 Cir., 211 F.2d 241.

### VIII.

■ The test under the Act to determine whether an employee is "engaged in commerce" is not whether the employee's activities affect or indirectly relate to interstate commerce, but whether the employee's activities are actually in or so closely related to the movement of commerce as to be a part of it. McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1538; Mitchell v. Household Finance Corp., 3 Cir., 208 F.2d 667, 671.

### IX.

The employees involved in this action are engaged in local activities neither in the channels of commerce nor closely related to the movement of interstate commerce. These employees are not engaged in commerce within the meaning of the Act. McLeod ·v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L. Ed. 1538; Mitchell v. Household Finance Corp., 3 Cir., 208 F.2d 667; Billeaudeau v. Temple Associates, Inc., 5 Cir., 213 F.2d 707; Mitchell v. Joyce Agency, 7 Cir., 211 F.2d 241.

### X.

The communications with Defendant's divisional offices, including the rare transmittal of the executory service contracts, are purely internal, and like the confidential daily reports sent to the subscribers, are incidental to the local services performed by the employee. The records, reports and the service contract have no value of their own. They are not Defendant's objective and Defendant does not sell them as goods. Their preparation and transmission incident to a business whose purpose does not comprise the production of goods at all, do not constitute engaging in the production of "goods". Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Kelly v. Ford, Bacon & Davis, 3 Cir., 162 F.2d 555; Scholl v. McWilliams Dredging Co., 2 Cir., 169 F.2d 729; Mitchell v. Household Finance Corp., 3 Cir., 208 F.2d 667; Billeaudeau v. Temple Associates, Inc., 5 Cir., 213 F.2d 707.

### XI.

The Defendant's employees who prepare and transmit such records, reports and service contracts are not engaged in the production of goods for commerce within the meaning of the Act. Bozant v. Bank of New York, supra; Kelly v. Ford, Bacon & Davis, supra; Scholl v. McWilliams Dredging Co., supra; Mitchell v. Household Finance Corp., supra; Billeaudeau v. Temple Associates, Inc., supra.

### XII.

To apply the Act to the employees involved in this action is to hold that the Act covers all employees of any firm merely because it conducts business in more than one state. Bozant v. Bank of New York, supra; Mitchell v. Household Finance Corp., supra.

### XIII.

Plaintiff has failed to establish that the employees involved in this action are engaged in commerce or in the production of goods for commerce within the meaning of the Fair Labor Standards Act, as amended.

### XIV.

The complaint should be dismissed.

#### Order for Judgment

It is ordered that judgment be entered accordingly.