Diane STEVENS

v.

**WELCOME WAGON INTERNATIONAL INC.**

Civ. A. No. 33093.

United States District Court
E. D. Pennsylvania.

Dec. 14, 1966.

228

Martin H. Philip, Slatington, Pa., and Irwin S. Lasky, Philadelphia, Pa., for plaintiff.

Edward W. Madeira, Jr., Philadelphia, Pa., for defendant.

## OPINION

KRAFT, District Judge.

In this action the plaintiff claims to recover certain minimum wages and overtime benefits under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. §§ 201–219.

■■ This case was tried to the court on October 11, 1966, pursuant to a waiver of jury trial and a waiver of *extensive**findings of fact and conclusions of law by the parties.

Briefly, we find that the plaintiff was employed as a hostess by the defendant on

---

* In compliance with Rule 52(a), which cannot be waived by the *Court*, Berguido v. Eastern Air Lines, Inc., 369 F.2d 874 (3 Cir., 1966), we have made essential findings of fact and conclusions of law.

June 25, 1962, after entering into a written contract. Her duties involved (1) offering a local customer service to local business establishments in Hazleton, Pennsylvania; (2) performing that service by contacting families in the Hazleton area to induce them to patronize the local merchants.

After ten days training at a school operated by the defendant in New York City, plaintiff returned to her home in Hazleton to undertake her hostess duties. Initially, she obtained service contracts from ten local business sponsors or subscribers, who agreed to utilize the Welcome Wagon service. Thereafter she contacted local families to publicize the local sponsors' business, with an ultimate goal of generating new business for the local retailers.

Additionally, plaintiff maintained daily, weekly and monthly reports of her activities, which she transmitted to the defendant in New York City and Memphis, Tennessee. The service contracts obtained by plaintiff, which she also sent to defendant, were not intended for resale, nor were they, in fact, sold by the defendant.

The "hostess" contract provided that plaintiff was to receive, as compensation for her services, 50 per cent of the gross receipts generating from calls made in her Hazleton territory. After the plaintiff made a "Welcome Wagon" call, the defendant would bill the local sponsor. Thereafter, Welcome Wagon remitted to the hostess one half of the amount paid by the local sponsor.

The plaintiff resigned her employment with defendant on January 4, 1963, and the defendant tendered $33.39 to her as full compensation for her services.

Essentially, the plaintiff claims that (1) in performing her duties she was engaged in interstate commerce and is entitled to benefits under §§ 206 and 207 of the Fair Labor Standards Act; or, alternatively, (2) by reason of the "enterprise" amendments to the Act, enacted in 1961, she is entitled to receive benefits, because of the extension of the Act's coverage to service establishments.

In Mitchell v. Welcome Wagon, Inc., 139 F.Supp. 674 (W.D.Tenn.1954)[1] aff'd. per curiam 232 F.2d 892 (6 Cir. 1956), the Court held that Welcome Wagon hostesses are neither engaged in commerce nor in the production of goods for commerce within the meaning of the Act.

At the trial the parties herein entered into a stipulation of pertinent facts (n. t. 63–68), which we adopt as findings. Many of the stipulated facts are taken verbatim from Mitchell v. Welcome Wagon, Inc., supra.

After careful consideration of the entire record, exhibits and the applicable law, we conclude that, as a matter of law, the plaintiff's activities were local in nature and were neither in commerce nor in the production of goods for commerce.

We now direct our attention to the plaintiff's alternative contention that the 1961 "enterprise" amendments to the Act afford her coverage. Specifically, the plaintiff relies on 29 U.S.C.A. § 203(s)

---

1. The District Court concluded at p. 679:
   "The employees involved in this action are engaged in local activities neither in the channels of commerce nor closely related to the movement of interstate commerce. These employees are not engaged in commerce within the meaning of the Act * * *.
   "The communications with Defendant's divisional offices, including the rare transmittal of the executory service contracts, are purely internal, and like the confidential daily reports sent to the subscribers, are incidental to the local services performed by the employee. The records, reports and the service contract have no value of their own. They are not Defendant's objective and Defendant does not sell them as goods. Their preparation and transmission incident to a business whose purpose does not comprise the production of goods at all, do not constitute engaging in the production of 'goods'. * * *
   "The Defendant's employees who prepare and transmit such records, reports and service contracts are not engaged in the production of goods for commerce within the meaning of the Act. * * *."

(3) which now provides coverage for all employees of

"(3) any *establishment* of any such *enterprise*, except *establishments* and *enterprises* referred to in other paragraphs of this subsection, which has employees engaged in commerce or in the production of goods for commerce if the annual gross volume of sales of such enterprise is not less than $1,000,000;" (emphasis ours).

The parties have stipulated that the defendant's annual gross volume of sales was not less than $1,000,000 during the years 1962 and 1963. It was also stipulated that the defendant's service is utilized by 40,000 local business establishments located in 1300 communities, which are serviced by 4000 hostesses.

■ An explanation of the terms *enterprise* and *establishment* as used in the Act, is essential to an understanding of their applicability to the facts of the instant case. Enterprise, as defined and applied in subsections (r)[2] and (s)[3] of 29 U.S.C.A. § 203 means, subject to specified limitations, "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether

performed in one or more establishments or by one or more corporate or other organizational units, including departments of an establishment operated through leasing arrangements. "Legislative History U.S.Code Cong. and Adm. News, pp. 1659, 1660 (1961).

*Establishment* is not defined in the Act, but is explained and distinguished from enterprise in 29 C.F.R. § 779.203 "Distinction between 'enterprise,' and 'establishment' and 'employer'".

(a) The coverage, exemption and other provisions of the Act depend, in part, on the scope of the terms 'employer,' 'establishment,' or 'enterprise.' The term 'employer' has been defined in the Act since its inception and has a well established meaning. As defined in section 3(d), it includes, with certain stated exceptions, any person acting directly or indirectly in the interest of an employer in relation to an employee. (See 779.19) The term 'establishment' means a 'distinct physical place of business' rather than 'an entire business or enterprise. * * *' (See 779.23)

(b) The term 'enterprise' has not previously been used in the Act, but the careful definition and the legislative

2. "(r) 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor: Provided, That, within the meaning of this subsection a retail or service establishment which is under independent ownership shall not be deemed to be so operated or controlled as to be other than a separate and distinct enterprise by reason of any arrangement, which includes, but is not necessarily limited to, an agreement, (1) that it will sell, or sell only, certain goods specified by a particular manufacturer, distributor, or advertiser, or (2) that it will join with other such establishments

in the same industry for the purpose of collective purchasing, or (3) that it will have the exclusive right to sell the goods or use the brand name of a manufacturer, distributor, or advertiser within a specified area, or by reason of the fact that it occupies premises leased to it by a person who also leases premises to other retail or service establishments."

3. "(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means any of the following in the activities of which employees are so engaged, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person:

(3) any establishment of any such enterprise, except establishments and enterprises referred to in other paragraphs of this subsection, which has employees engaged in commerce or in the production of goods for commerce if the annual gross volume of sales of such enterprise is not less than $1,000,000."

history of the 1961 amendments provide guidance as to its meaning and application. As defined in the Act, the term 'enterprise' is roughly descriptive of a business rather than of an establishment or of an employer although on occasion the three may coincide. The enterprise, however, is not necessarily co-extensive with the entire business activities of an employer.

(c) The enterprise may consist of a single establishment (see § 779.204(a)) which may be operated by one or more employers; or it may be composed of a number of establishments which may be operated by one or more employers (see § 779.204(b)). On the other hand, a single employer may operate more than one enterprise (see § 779.204(c)). The Act treats as separate enterprises different businesses which are unrelated to each other even if they are operated by the same employer."

■ Thus, the "enterprise" in the instant case would encompass the entire business operation of the defendant, while the "establishment" would be the plaintiff's *home* in Hazleton. The record shows that plaintiff maintained a telephone listing in the name of Welcome Wagon and operated from an office in her home, where she kept records and completed reports.

■ Though all of the plaintiff's sales of service contracts and service calls were made away from her *home,* such a premises qualifies as one of Welcome Wagon's places of business. "[T]he unit store ordinarily will constitute the establishment contemplated by the exceptions." (29 C.F.R. § 779.304) However " * * any *fixed site,* whether *home* or office, used by a salesman as a headquarters or for telephonic solicitation of sales must be construed as one of his employer's place of business, even though the employer *is not in any formal sense the* owner or tenant of the property." 29 C.F.R. § 541.502 (emphasis ours)

■ The legislative history of the 1961 amendments describes one of the purposes of the law to be: "Second, it will extend protection of the Fair Labor Standards Act to 4,100,000 additional employees mainly in large retail and *service* enterprises which are engaged in commerce or in the production of goods for commerce." (emphasis ours) U.S. Cong. and Adm.News, p. 1621 (1961)

■ *Subject to certain important exceptions,* the 1961 amendments extend coverage to any employee of a service *establishment* of an *enterprise* engaged in commerce or in the production of goods for commerce, regardless of the duties of the individual employee, if the annual gross volume of sales of such enterprise is not less than $1,000,000. 29 C.F.R. § 779.200

■ However, assuming that the defendant is an enterprise within the meaning of § 203(r) and (s) (3), we think the plaintiff is not entitled to benefits by reason of an exemption contained in 29 U.S.C.A. § 213(a) (2) which reads as follows:

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to— * * *

(2) any employee employed by any retail or *service establishment,* more than 50 per centum of which *establishment's* annual dollar volume of sales of *goods or services is made within the State* in which the *establishment is located,* if such establishment—

(i) is not in an enterprise described in section 203(s) of this title, *or*

* * * * * *

(iv) *is in such an enterprise* and has an annual dollar volume of sales (exclusive of excise taxes at the retail level which are separately stated) which is less than $250,000."

"A *'retail or service establishment'* shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or *services* (or of both) is not for resale and is recognized as retail sales or services in the particular industry * * *." (emphasis ours)

This section has been interpreted to mean that, even though an *enterprise* comes within the meaning of § 203(s)

(3)—if the service *establishment* itself has annual sales of *services* which are less than $250,000 such establishment is exempt from the Act. 29 C.F.R. §§ 779.336, 337.

The Conference Report No. 327 on the 1961 amendments reveals the following:

"Exemptions.—The House bill exempts employees of retail *establishments* having an annual dollar volume of sales of less than $250,000. The conference substitute (sec. 13(a) (2) (iv)) adopts a provision to the same effect, *except that service establishments would also be given the advantage of the exemption.*" U.S.Cong. and Adm. News, p. 1708 (1961) (emphasis ours)

Applying the statutory criteria of the § 213(a) (2) exemption to the facts of the instant case we find:

(1) More than 50 per cent, in fact *all,* of the plaintiff's sales and services were made within the Hazleton, Pennsylvania area where the establishment was located.

(2) The Hazleton service establishment is in an enterprise (Welcome Wagon International, Inc.) described in section 203(s), *but* this service establishment had an annual dollar volume of sales which was less than $250,000.

(3) The plaintiff's entire annual dollar volume of sales and *services* was not for resale and is recognized as retail sales and *services* in the public relations industry. Mitchell v. Welcome Wagon, Inc., supra.

Accordingly, we conclude that plaintiff falls within the exemption from coverage under the Act, as amended, and is not entitled to recover the benefits claimed. In view of our conclusions we deem it unnecessary to consider the other questions raised by the parties in their briefs.

### ORDER

Now, this 14th day of December, 1966, it is ordered, accordingly, that judgment be, and it is, entered in favor of the defendant, Welcome Wagon International, Inc., and against the plaintiff, Diane Stevens.